## COMMONWEALTH *vs.* ABNER B. COOPER.

Suffolk.   Nov. 22, 1880. — Feb. 17, 1881.   LORD & SOULE, JJ., absent.

The erroneous admission of secondary evidence of the contents of a written instru-
ment affords no ground of exception, if the instrument is afterwards put in
evidence.

A usage of brokers that one, on receipt of an order to buy stocks on a margin,
assumes the contract himself, instead of making it with a third person, is
illegal.

It is no defence to an indictment for the embezzlement of money, under the Gen.
Sts. *c.* 161, § 38, that the money was entrusted to the defendant for an illegal
purpose.

INDICTMENT in two counts, under the Gen. Sts. *c.* 161, § 38,
for embezzlement.   The first count alleged the embezzlement of
a piece of paper, of the value of $200, the property of Irwin
Wood, which had been delivered by Wood to the defendant " in
the trust and confidence and with the direction " that the de-
fendant would " invest the same in railway shares, in the behalf
of, and under the direction, and in the name of said Wood."
The second count alleged the embezzlement of a check, of the
value of two hundred dollars, the property of Irwin Wood, which
had been delivered by Wood to the defendant, " in the trust and
confidence and with the direction " that the defendant would
" invest the same on margin in shares of the capital stock of the
Cincinnati, Sandusky and Cleveland Railroad Company, for and
in behalf of, and in the name of " Wood.

Trial in the Superior Court, before *Bacon*, J., who allowed a
bill of exceptions in substance as follows :

There was evidence that the defendant wrote a circular letter
to Wood, who answered it.   The letter of the defendant was
not produced; and Wood testified that he had made diligent
search for it and could not find it, and that it had been de-
stroyed.   The defendant was not notified to produce the answer,
except by a verbal notice to his counsel, just before the trial
commenced.   The witness was allowed, against the defendant's
objection, to testify as to the contents of the two letters; the
judge ruling that the defendant had received sufficient notice to
produce the letter sent to him.   Under the same circumstances,

the witness was allowed to testify as to the contents of a letter from the defendant to himself, and the answer.

The witness testified that the defendant wrote him a letter, offering him to buy one hundred shares of the stock of a certain railroad, which was selling for between $4 and $5 a share, if he would send him $200; that he wrote the defendant a letter, ordering him to buy one hundred shares of said stock, and sent him a check for $200, which was paid; that he knew or understood when he sent the order that the defendant could not and would not purchase the stock for $200, but he expected that the $200 were to be deposited with the party selling and contracting to deliver the stock, as security on the part of the witness against any depreciation of the market value of the stock, and as security that the witness would take the stock and pay the balance due for it.

At this point, at the suggestion of the government, the court was adjourned to give the defendant opportunity to search for and produce any letters sent to him; and he was notified to produce any letters he might have from the witness.

On the next day, the defendant produced various letters, among which were the two letters the contents of which were testified to by the witness on the preceding day. The material part of this testimony was that the defendant said in letters to the witness that he had purchased the stock of a third party, who was carrying the stock; and that the stock was going up, and advising the witness not to sell his stock.

The witness further testified that he afterward offered to take the stock and pay the balance; and that the defendant, verbally and by letter, told him various stories about the person of whom he had purchased the stock, pretending there was such a person, but finally, when arrested on civil process, said there was no such person, but that, when he received the $200, he was short, and put the money with his own funds.

The defendant offered to show that the following was the custom of brokers in Boston: "1st. When they receive an order to buy stocks on margin, it means that the broker makes a contract, verbal or written, with any person whatever, within sixty days from said date, if the stock goes up the seller shall pay in cash the difference, and if the stock goes down the buyer

shall pay in cash the difference; and that the money or margin put up by the buyer is for security that he shall perform his contract. 2d. Upon the receipt of such an order by the buyer, it is the custom for the broker to assume it himself, instead of making it with third parties."

The judge admitted all evidence under the first offer, and excluded evidence under the second offer.

The defendant then testified that, when he received the $200, he put it among his own funds and assumed the contract himself; that he informed Wood that he had made the contract with a third party, which was not true; that he had been a broker for six or seven years in Boston; that it was the custom of brokers to buy and sell stocks on margin; that the meaning of that was as above stated; that he received this order and agreed to execute it under that custom; that it was also the custom to make such contract with any person, either verbal or · written, and without knowledge whether the party making the contract owns the stock or not, and that fact had nothing to do with the contract. The defendant introduced no evidence, except his own testimony, of any such custom as is stated above; and there was no evidence that Wood knew of any such custom.

The defendant then contended that this contract was a gambling contract, and was illegal under the statute; and that, even if he had appropriated the margin, he could not be convicted of embezzlement.

The judge instructed the jury that, if the money was sent to the defendant to be applied to a particular purpose, and the defendant fraudulently and deceitfully applied it to his own use, it would be embezzlement.

The jury returned a verdict of guilty on the first count, and not guilty on the second count; and the defendant alleged exceptions.

*L. M. Child,* for the defendant.

*F. H. Gillett,* Assistant Attorney General, (*G. Marston,* Attorney General, with him,) for the Commonwealth.

MORTON, J. If there was any error in admitting, on the first day of the trial, secondary evidence of the contents of the two letters from the witness Wood to the defendant, it was cured by

the production by the defendant on the second day of the original letters. They were then put in evidence in the place of the secondary evidence of their contents, which thus became immaterial.

The verdict of the jury has rendered the defendant's exception to the exclusion of the evidence offered to prove the custom of brokers in Boston immaterial, they having found that the defendant was not guilty on the second count.

The findings on the two counts import that there was no order by Wood "to buy stocks on margin," and therefore the customs offered do not apply to the facts as proved. But if there had been an-order by Wood "to buy stocks on margin," we think that evidence of the custom contained in the second offer of the defendant would be inadmissible. When a man gives an order to a broker "to buy stocks on margin," he employs the broker to act for him and in his interest; the broker has no right to put himself in a position antagonistic to the interests of his employer; he cannot make himself both buyer and seller, and any custom to this effect, unknown to the employer, is against public policy, and illegal. *Farnsworth* v. *Hemmer*, 1 Allen, 494.

The defendant further contended that his contract with Wood " was a gambling contract, and was illegal under the statute; and that, even if he had appropriated the margin, he could not be convicted of embezzlement." There was no evidence that Wood contemplated, or authorized the defendant to enter into, any gambling or illegal contract. If he had, the check or money sent by him would remain the subject of larceny or embezzlement; and if the defendant fraudulently appropriated it to his own use, it would be no defence to an indictment by the government for embezzlement to show that the property had been entrusted to him for an illegal purpose. *Commonwealth* v. *Smith*, 129 Mass. 104.                      *Exceptions overruled.*