[Crim. No. 710.   Department One. — October 11, 1901.]

THE PEOPLE, Respondent, v. BERNARD WARD, Appellant.

134   301
136    23

134   301
139   528

134   301
s141  629

134   301
142    94
142   220

CRIMINAL LAW — SUFFICIENCY OF INFORMATION — SUBSTANTIAL CONFORMITY TO STATUTE — USE OF EQUIVALENT WORDS. — An information for a felony is sufficient if it substantially conforms to the statute, and uses words equivalent in meaning thereto, though not the precise words employed in the statute.

ID. — INFORMATION FOR EMBEZZLEMENT — CHANGE OF FORM OF EXPRESSION IN STATUTE. — An information for embezzlement which shows that the defendant received funds by virtue of his trust as the financial secretary of a corporation, and embezzled and converted the same to his own use, "contrary to his said trust," is not defective because not using the statutory words, "not in the due and lawful execution of his trust." The two expressions are equivalent, and convey the same meaning.

ID. — PROOF OF INCORPORATION — DE FACTO EXISTENCE. — It is sufficient to prove the de facto existence of the corporation, the funds of which were embezzled by the defendant; and proof that it was a corporation de jure is not essential.

ID. — DEMAND FOR MONEY EMBEZZLED — AUTHORITY OF TREASURER. — A demand, by the corporation, for the money embezzled is not an indispensable requirement of the law, to constitute the offense, which may possibly be proved without a demand, though a demand and refusal, if other essential facts exist, is evidence of embezzlement. A demand by the treasurer of the corporation, who was also a member of a special committee to investigate the alleged embezzlement, was made by sufficient authority.

ID. — DISPROVED DENIAL OF RECEIPT OF EMBEZZLED MONEY — EVIDENCE OF OFFENSE. — Where the defendant not only refused to comply with the demand for return of the money, but denied that he ever received any part of the money, alleged to be embezzled, and such denial was disproved, and it was found by the jury that he did receive it, the fact of such receipt renders the denial thereof convincing evidence of the offense charged.

ID. — EVIDENCE OF OTHER MONEYS DRAWN BY DEFENDANT. — Evidence is admissible that other moneys of the corporation were drawn by the defendant, upon similar orders, from the same and other banks, and were delivered to the defendant, and that they were not drawn for the protection of the corporation, or because of its wishes.

ID. — PROOF OF CORPUS DELICTI — ORDER OF EVIDENCE. — Proof of the corpus delicti does not necessarily involve or require proof that the crime was committed by the defendant. The proper order of evidence is, that there should be, first, independent proof of the body of

the offense, but a case should not be reversed, merely because of a departure from such order. In this case it is held that the *corpus delicti* was sufficiently proved, before proof of the obtaining of other moneys by the defendant.

ID. — IMPEACHMENT OF WITNESS — CONVICTION OF FELONY — ABSENCE OF SENTENCE. — A witness may be impeached by showing that he has been convicted of a felony by the verdict of a jury, and the fact that no sentence had yet been pronounced upon the witness is immaterial, where the verdict does not appear to have been set aside.

ID. — EVIDENCE OF REPUTATION — PERSONAL KNOWLEDGE — STRIKING OUT TESTIMONY. — The testimony of witnesses called to prove the reputation of a witness, who testified from personal knowledge only, was properly stricken out.

ID. — REFUSAL OF INAPPLICABLE INSTRUCTIONS. — Requested instructions which are inapplicable to the evidence are properly refused.

ID. — AUTHORITY TO DRAW MONEY TO DELAY CREDITORS — DEFENSE TO EMBEZZLEMENT. — The fact that the corporation gave authority for the withdrawal of money from the bank, for the purpose of hindering and delaying its creditors, cannot constitute a defense to an indictment for the embezzlement of its funds.

ID. — REQUESTED INSTRUCTION AS TO TESTIMONY OF ACCOMPLICE. — Where the case was not tried on the theory that the treasurer of the corporation was an accomplice with the defendant in the embezzlement charged in the information, it requires something more than suspicious circumstances connected with other transactions to justify a requested instruction predicated upon his being an accomplice with the defendant; and where such requested instruction was also inaccurate and misleading, it was properly refused.

ID. — ARGUMENT OF COUNSEL — VITUPERATIVE EPITHETS — CHARGE TO JURY — PRESUMPTION. — Counsel for the prosecution ought not to indulge in extravagant vituperative epithets against the defendant, but where the court charges the jury in relation thereto, that they must not consider the personal views and opinions expressed by counsel, it is not to be presumed that the jury disregarded the charge, nor that the defendant was prejudiced.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. F. H. Dunne, Judge.

The facts are stated in the opinion.

Frank McGowan, and J. N. E. Wilson, for Appellant.

Tirey L. Ford, Attorney-General, A. A. Moore, Jr., Deputy Attorney-General, W. W. Foote, and J. J. Lerman, for Respondent.

HAYNES, C.—The defendant was convicted of the crime of embezzlement, and appeals from the judgment and from an order denying his motion for a new trial. The points made by appellant for reversal will be noticed in the order in which they are presented in his brief.

1. The information, I think, is sufficient. The facts alleged therein are, in substance, that, at the date and place named the defendant was the financial secretary of the Pacific Coast Marine Fireman's Union, a corporation; that by virtue of his trust as such officer there came into his possession, custody, and control the sum of four thousand dollars, the property of said corporation; and that he did, at a place and time named, "unlawfully, fraudulently, and feloniously convert, embezzle, and appropriate the same to his own use, contrary to his said trust as such officer as aforesaid, contrary to the form," etc.

The crime charged is that of embezzlement as defined in section 504 of the Penal Code, and the only insufficiency alleged is, that the pleader omitted the phrase, "not in the due and lawful execution of his trust," and substituted therefor the words, "contrary to his trust as such officer as aforesaid." If the conversion to his own use was fraudulent and felonious, and "contrary to his trust," it could not be "in the due and lawful execution of his trust"; and if it was "not in the due and lawful execution of his trust," it was "contrary to his trust." The expressions are equivalent. It is conceded by appellant that if the information substantially conforms to the statute, it is sufficient. "Words used in a statute to define a public offense need not be strictly pursued in the indictment or information, but other words, conveying the same meaning, may be used." (Pen. Code, sec. 958.)

2. It is contended that there is no legal evidence of the incorporation of the Pacific Coast Marine Fireman's Union, whose money, it is charged, defendant embezzled. There was ample evidence that the Union was a *de facto* corporation existing under the name stated in the information, and proof that it was a *de jure* corporation was not essential.

3. Prior to the arrest of defendant, a demand was made upon him by Andrew Pryall, the treasurer of the Union, for the four thousand dollars charged in the information to have been embezzled. The demand was in writing, and was offered in evidence, and defendant objected that it was "irrelevant,

immaterial, and incompetent," and the objection was over-ruled.

It is now contended that a demand for the money is indispensable; that "without such demand, no offense exists," and that it did not appear that Pryall had any power or authority to make the demand. This ground of objection was not specified. But waiving that point, it was shown that Pryall was the treasurer of the corporation at the time the demand was made, and besides, was a member of a committee appointed by the corporation to investigate the alleged embezzlement, with "full power to act, according to their judgment, for the best interests of the Union." His office as treasurer, and the special authority given as a member of the committee, gave him ample power to make the demand, if a demand were necessary. A demand is not "an indispensable requirement of law in all cases," as contended by appellant, nor can it be true that "without such demand, no offense exists." A demand, followed by a refusal, if the other essential facts exist, is evidence of embezzlement, and sometimes indispensable evidence of it, but it is the fraudulent and felonious conversion of the money or other property that constitutes the offense, and that may often be proved without a demand. (*People* v. *Bidleman*, 104 Cal. 608; *People* v. *Royce*, 106 Cal. 173; Wharton's Criminal Law, sec. 1030.) *State* v. *Pierce*, 7 Kan. App. 418, cited by appellant, was a Kansas case, and was under a statute which made the refusal to deliver on demand the gist of the offense. It may be added to what has been said, that when the demand was made by Pryall the defendant responded that he had no money belonging to the Union; and he also testified that he never had the money charged to have been embezzled by him, nor any part of it. The jury found that he did receive it. If he did, his denial was convincing evidence of the offense charged.

4. It is contended that the court erred in permitting evidence to be given, tending to show that other moneys of the Union, besides the four thousand dollars specified in the information, came to the hands of the defendant.

The defendant, during the time covered by these transactions, was the financial secretary of the Union, and John Dougherty was treasurer.

The moneys of the Union had been deposited with various banks in the city of San Francisco. Under the by-laws of the

Union, such moneys could be drawn therefrom only upon drafts drawn by the financial secretary, countersigned by the treasurer and the board of trustees, or a majority of them; but—as appeared from the testimony of the defendant and other witnesses—a resolution was passed in January, 1897, empowering one trustee and the financial secretary and the treasurer, or a majority of the three, to draw the moneys so on deposit. The purpose of the resolution, it was said, was to place the money beyond the reach of anticipated creditors. The four thousand dollars here charged to have been embezzled was on deposit with the German Savings and Loan Society, and was drawn from that bank, March 1, 1897, under said resolution, on an order signed by Bernard Ward, secretary, and John Dougherty, treasurer, and made payable to "John Dougherty or bearer." The body of the order was in Ward's handwriting, and the money was delivered by the bank to Dougherty, who testified that he delivered it to Ward, who, however, denied that he received it, or any part of it.

It also appears, from evidence admitted over the objections of appellant, and which is the subject of the exception now being considered, that other moneys were drawn, on similar orders, from the same and other banks, aggregating $9,635.93, —namely: from the San Francisco Savings Union, March 1, 1897, $3,000; from the Hibernia Savings and Loan Society, March 5, 1897, $3,000; from the German Savings and Loan Society, July 9, 1897, $2,772 and $721.70; and July 29, from the Hibernia Savings and Loan Society, $142.23. All of these moneys, according to Dougherty's testimony, were delivered to Ward; but the latter denies that he received them, or any part of them.

The objections to these several items of proof were, that the evidence was not relevant, and that the *corpus delicti* had not been proven. That these several withdrawals from other banks were intimately connected with the withdrawal of the four thousand dollars from the German Savings Bank, for the embezzlement of which appellant was being tried, is clear. The orders upon which they were drawn were in the same form, signed by the same persons, under the same authority, and the same reason existed for each of the withdrawals, so far as the Union was concerned, and also so far as concerned the defendant. It is argued that the mere withdrawal of these other

sums did not prove an embezzlement of them, nor of the four thousand dollars charged in the information. But if it were necessary to prove the embezzlement of these other sums, it was an essential step towards making such proof. This evidence, however, had a direct bearing upon the question of the embezzlement charged in the information, and was therefore relevant. The purpose of the resolution authorizing the treasurer and the financial secretary to withdraw these deposits from the several banks was to place these moneys beyond the reach of creditors. The same reason for the withdrawal of the four thousand dollars from the German Savings Bank on March 1, 1897, existed for the withdrawal of all the deposits in each of the several banks, at the same time; yet the remainder of the deposit in the German Savings Bank, amounting to $3,493.70, was not withdrawn until July 9, 1897, and a balance of $142.23 was left in the Hibernia Bank until July 27th, so that nearly four thousand dollars was left on deposit for more than four months after the first withdrawal. These facts tend strongly to show that the purpose and intent of defendant in withdrawing the four thousand dollars from the German Savings Bank was not the protection of the Union against the claims of creditors, and was therefore relevant to the issue being tried, and completely rebuts appellant's contention that "there is absolutely nothing to show that any of the alleged acts of Ward or Dougherty was not strictly in accord with the direction and wishes of the Union," for it is convincing evidence that none of the withdrawals was made for its protection or because of its wishes.

Nor is the other objection—"that the *corpus delicti* had not been proven"—of any validity. Proof of the *corpus delicti* does not necessarily involve or require proof that the crime was committed by the defendant, or person charged with having committed it. The general rule is, that it must first be shown; but, except in those cases where it is sought to put in evidence the confession or admission of the defendant, the order of proof is in the discretion of the court, and even in those cases plenary proof of the *corpus delicti* is not always required. In *People* v. *Whiteman*, 114 Cal. 338, letters of the defendant containing certain admissions were admitted before there was proof of the *corpus delicti*, and it was held not to be reversible error. Mr. Justice Temple said: "That it is the fairer course that there should be independent proof, first, as

to the body of the offense, cannot be doubted. But I do not think a case should be reversed, merely because of a departure from the natural and just order of evidence." In this case, however, before this objection was made, Dougherty testified to drawing said four thousand dollars from the German Savings Bank at defendant's direction; that he delivered it to Ward; that Ward told him different yarns about it, and avowed his intention to devote it to purposes not authorized by his trust. Proof that said four thousand dollars had gone into Ward's hands, and of the demand made by Pryall upon him for said money, and his response that he had no money belonging to the Union, had also been given, and this evidence had been received without said objection being made. The objections here considered were not well taken.

5. Patrick Rogers, a witness called by defendant, was asked, upon cross-examination, whether he had been convicted of a felony. It was then shown that he had been found guilty of a felony, by a verdict of the jury, but had not been sentenced. It was objected, that, not having been sentenced, he had not been convicted. The objection was overruled, and the witness answered, "yes"; and it is now urged that the court erred in its ruling, and that the judgment should be reversed therefor.

Section 2051 of the Code of Civil Procedure provides: "A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a felony."

It is contended that at the time the witness testified he had not been "convicted of a felony"; that to sustain the ruling of the court, it must be assumed, as a matter of law, that the verdict of guilty constituted a "conviction." That such verdict does constitute a conviction, within the ordinary as well as the technical meaning of the word, seems to be well settled. Blackstone (book 4, p. 362), after speaking of the verdict of acquittal, says: "But if the jury find him guilty, he is then to be convicted of the crime whereof he stands indicted. Which conviction may accrue two ways: either by his confessing the offense and pleading guilty, or being found so by the verdict of his country." So at page 363: "It is not uncommon, when a person is convicted of a misdemeanor, . . .

to permit the defendant to speak with the prosecutor before any judgment is pronounced." So at page 375, the same author said: "We are now to consider the next stage of criminal prosecution, after trial and conviction are passed, . . . which is that of *judgment*."

In *United States* v. *Gilbert*, 2 Sum. 19, 40, Mr. Justice Story said: "And here,. in order to avoid ambiguity, it may be proper to state that conviction does not mean the judgment passed upon the verdict; but if the jury find him (the party) guilty, he is then said to be convicted of the crime whereof he stands indicted." (See also Bouvier's Law Dictionary, and cases cited,. especially *Commonwealth* v. *Lockwood*, 109 Mass. 325,[1] and *Nason* v. *Staples*, 48 Me. 126.)

The words "convict" and "conviction" are used in the Penal Code in the sense above stated. "A general verdict upon a plea of not guilty is either 'guilty' or 'not guilty,' which imports a conviction or acquittal of the offense charged in the indictment." (Pen. Code, sec. 1151.) "Whenever a crime is distinguished into degrees, the jury, if they *convict* the defendant, must," etc. (Pen. Code, sec. 1157.)

At common law, persons convicted of an infamous crime were *incompetent* to testify, and this incompetency was required to be shown by the record, which included the judgment. "It is *the judgment*, and that only, which is received as the legal and conclusive evidence of the party's guilt for the purpose of rendering him incompetent to testify. . . . If the guilt of the party should be shown by oral evidence, and even by his own admission (though in neither of these modes can it be proved, if the evidence be objected to), or by his plea of 'guilty,' which has not been followed by a judgment, the proof does not go to the competency, however it may affect his credibility." (1 Greenleaf on Evidence, sec. 375.) Our statute does not in any manner affect the competency of the witness. It does not brand him as "infamous,"—a quality determined by the character of the punishment inflicted. It deems him still capable of telling the truth, but permits the fact of conviction to be shown as a side light upon his moral character, thus affecting his credibility. The question as to whether such conviction could be shown if 'he verdict had been set aside by

---

[1] 12 Am. Rep. 699.

granting a new trial, or otherwise, does not arise, and is not considered.

6. The testimony of Mr. Crigler and of Dr. Baumeister, called by defendant to prove reputation, was properly stricken out. The cross-examination showed that each testified from personal knowledge only, and not from reputation.

7. Appellant's seventh point is, that the court erred in refusing to give the thirteenth instruction requested by the defendant, which is as follows: "If the jury believe from the evidence herein that the witness John Dougherty was induced or influenced to become a witness and to testify in this case by any promise of immunity from prosecution or punishment, or by any hope held out to him that if he testified against the defendant he would not be prosecuted for any alleged embezzlement against him, then the jury should take such facts into consideration in determining the weight which ought to be given to such testimony thus obtained. Such testimony should only be received by the jury with caution and scrutinized with care."

The only testimony in the record upon the subject of this instruction is the following: " Q. Have you ever been promised any immunity from punishment if you testified in the case of *People* v. *Ward?* — A. Never, by any one. Q. Do you know of any arrangement being made by which your information shall be dismissed after this case has been tried? — A. Never did. Q. You don't know of any? — A. No, sir." The instruction was properly refused.

It is also contended by appellant that as the authority given by the Union for the withdrawal of the money from the bank was for the fraudulent purpose of hindering and delaying its creditors, a conversion of it by the defendant did not constitute embezzlement, and that the court erred in not instructing the jury to that effect, as requested. The instruction was properly refused. The Union, by authorizing the withdrawal of the deposit, did not part with its ownership of the money, nor pretend or attempt to do so. As between it and its agent, to whom the money was intrusted, there can be no question as to its ownership. In *Commonwealth* v. *Cooper,* 130 Mass. 285, it was held to be no defense to an indictment for the embezzlement of the money, that it was intrusted to the defendant for an illegal purpose. (See also *Commonwealth* v. *Smith,* 129 Mass. 111;

*State* v. *Shadd*, 80 Mo. 358; *State* v. *May*, 20 Iowa, 305; *State* v. *Tumey*, 81 Ind. 559; *People* v. *Martin*, 102 Cal. 558.)

Appellant also contends that the court erred in refusing to give his proposed instruction No. 19, to the effect that if the jury believe from the evidence that Dougherty was an accomplice of the defendant in embezzling the money mentioned in the information, that no conviction could be had on his testimony, unless corroborated as required by section 1111 of the Penal Code.

The money charged in the information to have been embezzled by the defendant was the sum of four thousand dollars, which was withdrawn from the German Savings Bank on March 1, 1897. This money, as we have seen, was drawn upon the order prepared by Ward, and signed by Ward and Dougherty. Their authority to withdraw said money is not questioned, and in withdrawing it no offense was committed. The only evidence to which appellant makes any specific reference for the purpose of showing that Dougherty was an accomplice is, that Dougherty carried it to Ward's house; that he was nervous and excited when he obtained the money at the Hibernia Bank; that he intended to deposit it in a bank at Oakland, and that he did deposit this money in his own name in a bank in San Francisco, where it remained six weeks. Counsel's reference to the folios of the transcript (468–499) shows that the money here spoken of was not the money charged in the information to have been embezzled; and it is only claimed by counsel that these facts, with many more in the record, disclose very suspicious circumstances on Dougherty's part. The case was not tried upon the theory that Dougherty was an accomplice in the embezzlement charged in the information. Neither the case on behalf of the prosecution, nor the theory of the defense, admits the supposition that Dougherty was an accomplice of Ward, or Ward an accomplice of Dougherty, in the embezzlement of the money charged in the information. It requires something more tangible than "suspicious circumstances" connected with other transactions to justify such an instruction as that under consideration. Instructions asked may be refused, if there is no evidence on which to predicate them. "Refusal to give instructions not applicable is not error." (*People* v. *Daniels*, 70 Cal. 521.)

But the instruction, as requested, is inaccurate and misleading, and for that reason, if no other, was properly refused.

The material part thereof is as follows: "If, after carefully considering all the evidence herein, you believe that the witness John Dougherty, who has been examined for the people, and the defendant *embezzled the money mentioned in the information,* or that said Dougherty aided or abetted the defendant in the commission of *an embezzlement,* then John Dougherty is an accomplice. . . . I further charge you that if you believe said witness John Dougherty to be *an accomplice* of the defendant, then the jury is instructed, as law, that the testimony of an accomplice ought to be viewed with distrust." (The italics are mine.)

It will be observed that the first clause of the instruction limits the supposed complicity to the embezzlement of the money mentioned in the information, — namely, four thousand dollars, — whereas the clause immediately following removed the said qualification by the use of the disjunctive "or," thus: "or that said Dougherty aided or abetted the defendant in the commission of *an* embezzlement," or literally, "any embezzlement." If the record had not disclosed that other sums belonging to the Union had been withdrawn from the same and other banks at different times by Ward and Dougherty under the authority given them by the Union, our criticism might seem strained; but, as already stated, counsel for appellant, for the purpose of showing that Dougherty was an accomplice of Ward, refers only to a different sum withdrawn from a different bank, at a different time, and which appears to have been deposited for a short time by Dougherty in his own name. If counsel rely upon this circumstance to justify the proposed instruction, we may reasonably infer that the jury would have been misled by it.

8. In the opening argument on behalf of the people, counsel expressed his belief concerning the defendant, to the effect that he believed him to be a thief, an embezzler, and a scoundrel, and that he had not an honest hair in his head, or an honest bone in his body; and counsel for defendant excepted thereto.

The counsel for the people then stated that he was speaking from the facts in the case, and that his statements were deductions therefrom. Counsel have no right to indulge in extravagant expressions of their belief, or in the use of degrading epithets. But the judgment should not be reversed because counsel lose their temper and indulge in epithets, unless it clearly appears that it prejudiced the defendant. The remedy

for such excesses should be administered in the trial court, at the moment of transgression. The principal offense in such cases is against the dignity of the court, and of that decorum which should always be observed by counsel in a court of justice. It never aids the prosecution, and usually creates sympathy for the defendant. The court, however, in charging the jury, called attention to this incident, and said: "I want to charge you at this time, that the personal views and opinions of counsel, if any were expressed, must have no place in your deliberations. Counsel have no right to offer them to you, and you must not be swayed or guided in any way by such statements." We cannot assume that the jury disregarded this instruction, any more than we could assume that it considered evidence that had been stricken out.

9. Appellant's last point is, that the evidence is not sufficient to sustain the verdict: 1. Because there was no legal demand; 2. Because there was no misappropriation or conversion of the money; and 3. That defendant acted in accordance with his duty as financial secretary of the Union. These points are merely stated, not argued anew. They have each been covered by the discussion of the several questions we have considered. We find no ground upon which the judgment or order should be reversed, and advise that they each be affirmed.

Chipman, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Garoutte, J., Harrison, J., Van Dyke, J.

Hearing in Bank denied.