[Crim. No. 1292. First Appellate District, Division Two.—December 21, 1925.]

THE PEOPLE, Respondent, v. A. F. INDRIERI, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT—EVIDENCE—SUPPORT OF VERDICT. In this prosecution for the embezzlement of a sum of money delivered to defendant to be deposited in court, the evidence was sufficient, if believed by the jury, to entitle them to bring in a verdict against the defendant.

[2] ID.—FLIGHT WITH EMBEZZLED MONEY—EVIDENCE—VERDICT.—In such prosecution, where it was shown by the evidence that after receiving the money the defendant failed to deposit it as agreed, but shortly after receiving it left the city of his residence for another city and later was arrested in another state, and that in the meantime he had not communicated his whereabouts to the

2. See 8 Cal. Jur. 44; 8 R. C. L. 192.

persons who had entrusted him with the money, the acts done and performed by defendant in taking the money out of the state would support the conclusion of the jury that such act on the part of defendant was embezzlement.

[3] ID.—DEMAND FOR MONEY EMBEZZLED—EVIDENCE.—In such prosecution, where defendant received the money from parties to certain pending litigation on behalf of an attorney at law with whom defendant was associated, not as a law partner but as a business associate, said attorney was entitled to demand the money from defendant in order that it might be deposited in court, and evidence of a conversation between said attorney and defendant relative to such deposit was such that the jury was entitled to treat said conversation as a demand and a neglect or refusal by defendant to comply therewith.

[4] ID.—OBJECTION TO EVIDENCE—WAIVER.—In such prosecution, the testimony of certain witnesses in response to general questions, as to whether or not the money had been paid, addressed to each of said witnesses and which in terms did not relate to what had been done after the arrest of defendant, was not erroneously received in evidence, where defendant's objection to the admission of such testimony was general and the defense made no application to have the testimony limited to the time transpiring between the date the defendant received the money and the date of his arrest and no objection was made on the ground that the question was too broad or that it extended to any facts that had occurred since the date of defendant's arrest, and even though the jury understood the testimony as being addressed to a time subsequent to the arrest of the defendant, the point was waived where the defendant, after the prosecution had closed its case, testified as a witness that he had never deposited the money in court.

[5] ID.—INSTRUCTIONS—READING TO JURY SECTION 512, PENAL CODE.— In a prosecution for embezzlement, it is not error for the trial court in instructing the jury to read to the jury section 512 of the Penal Code.

[6] ID.—RETURN OF MONEY EMBEZZLED—DEMAND—EVIDENCE—INSTRUCTIONS.—In such prosecution, the trial court did not err in altering an instruction requested by the defendant to the effect that if no proof was introduced of a demand having been made upon defendant, or his wife, for the return of the money involved the defendant should be acquitted, by adding thereto the words "or anyone acting under their authority" after the words "or his wife," since after it was altered the instruction was more favor-

able to defendant than he was entitled to in that it implied that proof of a demand is always necessary in every embezzlement case, which is not the law.

(1) 20 C. J., p. 486, n. 60.    (2) 20 C. J., p. 486, n. 60.    (3) 20 C. J., p. 486, n. 60.    (4) 17 C. J., p. 211, n. 4, p. 317, n. 10.    (5) 16 C. J., p. 968, n. 95.    (6) 17 C. J., p. 359, n. 64.

APPEAL from a judgment of the Superior Court of Fresno County. Denver S. Church, Judge. Affirmed.

The facts are stated in the opinion of the court.

Penn Cummings and Thomas F. Lopez for Appellant.

U. S. Webb, Attorney-General, and Charles A. Wetmore, Jr., Deputy Attorney-General, for Respondent.

STURTEVANT, J.—The defendant was convicted on a charge of embezzlement. He made a motion for a new trial, the motion was denied, and he has appealed from the judgment of conviction and the order denying him a new trial.

On the twenty-eighth day of January, 1925, and for some time prior thereto, Mr. J. O. Traber was an attorney at law located at Fresno and engaged in the practice of the law at that place. The defendant was not an attorney at law admitted to practice in the courts of record of the state of California, but he had offices with Mr. Traber. As stated in testimony by the defendant he was not a law partner of Mr. Traber, but he was a business partner. Mrs. Markese, a daughter of Mr. and Mrs. Zero, was one of the clerks in the office. The defendant is an Italian, but speaks the English language, as shown by his testimony contained in the transcript. Some time prior to the twenty-eighth day of January, 1925, an action was commenced in the superior court of Fresno County entitled *Louis F. Ryan* v. *Jack Zero and Lucy Zero, his wife.* It was a suit in equity brought by the plaintiff to obtain a decree declaring terminated a certain contract for the purchase and sale of real property. Among other things it was alleged in the complaint that the purchaser had made default in the payment of an installment of $300 which had become due and payable under the terms of

the contract. Shortly after the defendants in the civil action had been served with a copy of the summons and complaint they called at the office where the defendant was located. Mr. Zero is an Italian and so little informed that he testified through an interpreter. Mrs. Zero also testified through an interpreter. Christine Delicci, a daughter, and Mr. Simone, a friend, both speak English and testified without the assistance of an interpreter. The conversations held in the lawyer's office were conducted at least in part in English and in part in Italian. Mrs. Delicci in those conversations acted as interpreter as she understood what was said in the Italian language and also what was said in the English language. The negotiations included several calls at the office occupied by the defendant. Mrs. Delicci testified that on one occasion Mrs. Zero, Mr. and Mrs. Delicci and Mr. Simone attended. There they found the defendant, Mr. Traber and Mrs. Markese. All participated in the conversation that followed. At that time the defendant advised Mrs. Zero that it would be necessary to deposit in court $300. Thereupon Mrs. Zero borrowed the money from Mr. Simone on a promissory note. Mr. Simone handed the money over to the defendant. The defendant put the money in his pocket. She also testified that this visit was brought about by reason of a message which the Zeros had received from the defendant on the previous day. Mrs. Delicci repeatedly stated that in reply to questions propounded to him the defendant said that he would take the money up to court "in just a minute," and "right in a minute." Mr. Delicci testified regarding the same conversation. He said that the defendant told Mr. Simone to give the Zeros $300 so they could give it to the defendant to take up to court. Mr. Simone gave the money to Mrs. Zero and she gave it to the defendant. The defendant said he was going up to court to deposit it "at that moment, just within five minutes of that time." The defendant said he wanted the money in cash. The witness asked the defendant if he wanted the witness to go with him to court and the defendant said he would go alone. He said he would go himself in five minutes, he would deposit it. Several of the witnesses present stated that on each visit that the Zeros made to the office that Mr. Traber was present. Mr.

Traber testified that he was present when Mr. and Mrs. Zero called regarding the defense of the civil case *Ryan v. Zero*. Among other things he testified as follows: "We had been employed in that case. Mr. Indrieri at that time was working in my office. He wasn't a lawyer but he was working out of my office. He brought in the business and I attended to it. In preparing our answer in that matter there was $300 yet to be paid on the contract. At that time I was acting as the attorney for the Zeros and am yet. After looking over the pleadings in the case I told Mr. Indrieri that it would be necessary in order that we could win out in the case that $300 be procured by the Zeros and turned over to us so that we could deposit that with the clerk of the superior court in the case of *Ryan v. Zero*. At that time I told Indrieri to have the Zeros come into the office and arrange the payment of the money. On the 28th or 29th they came in. After some talk in Italian the defendant told me that Mr. Simone was willing to loan these people the $300 to deposit with the court. Later Mr. Simone drew his check for $300 and the defendant said, 'No, I don't want that I want cash money,' thereupon Mr. Simone and another gentleman went out and brought back $300 in currency and placed it in front of Indrieri. He took out his bill-folder and put the $300 into it. February 2, 1925, the defendant told me that he was going to Los Angeles to bring his wife and children up to Fresno. During the afternoon of that day I said, 'Well, now Alec,' that is what I called him, 'I got to appear in this case for the Zeros before you will get back and I have got to deposit that with the clerk.' The defendant said, 'Well, I will be back by Thursday and you will not have any use for that money before Thursday and then I can pay it to you.' He didn't give me the money. The answer was due on the 2d of February, but I had gotten two days extension to the 4th day of February. I never saw Mr. Indrieri after that day until today. I never got the money from him." On cross-examination he testified: "I never deposited the money in court because it never came into my hands. Mr. Indrieri took it. The answer was filed on the 11th of February."

On the evening of the 2d of February the defendant left Fresno for Los Angeles and thereafter, on the twenty-third day of February, he was arrested in Kansas City. He testified that at that time he was on his way to New York City. There is no evidence in the record that in the meantime he communicated with Mr. and Mrs. Zero as to his whereabouts. He testified that he deposited the money January 29, 1923, in the Pacific Southwest Bank in his own name, and that at the time he was arrested he had $1,600 or $1,700 in his pocket and at the date of the trial he had $300 to pay into court in the case of *Ryan* v. *Zero* when he received a court order to do so.

[1] The appellant contends that the evidence was wholly insufficient to show that appellant appropriated to his own use any of the money deposited with him by the Zeros. In that connection the appellant contends that the record does not show facts constituting an actual misappropriation and that it does not show a constructive misappropriation because there is no evidence of a demand made on the defendant by anybody unless by Mr. Traber and that the conversation delineated by Mr. Traber did not constitute a demand, furthermore the defendant was the authorized custodian of the funds and Mr. Traber was not, nor was Mr. Traber the attorney, and, consequently, he was not authorized to make the demand. Conceding that there is some evidence in the record which would support the appellant in making these respective contentions, nevertheless, if the jury believed the evidence which we have recited the jury was entitled to bring in a verdict against the appellant. [2] If, as claimed by the appellant, the defendant was the custodian of the funds, the acts done and performed by the defendant thereafter in taking the money out of the state would support the conclusion of the jury that such act on the part of the defendant was an embezzlement. (*People* v. *Fisher,* 16 Cal. App. 271, 275 [116 Pac. 688].) [3] Moreover, there was some evidence in the record to the effect that Mr. Traber was the attorney and that the defendant was merely an associate in business with Mr. Traber. Under this theory of the evidence Mr. Traber was entitled to make a demand and the conversation delineated by him was such that the

jury was entitled to treat that conversation as a demand and a neglect or refusal to comply therewith.

[4] The second point made by the appellant is that certain evidence was received erroneously over the objection and exception of the appellant. During the presentation of the case for the prosecution. Mrs. Zero, Mr. Zero, and the county clerk were each asked if the money had been paid; each replied that it had not been. The question as addressed to each witness was general and did not in terms relate to what had been done after the arrest of the defendant. The objection interposed was general. The defense made no application to have the testimony limited to the time transpiring between the date that the defendant received the money and the date of his arrest. No objection was made on the ground that the question was too broad or that it extended to any facts that had occurred since the date of the arrest. There is nothing to show that the jury understood the testimony as being addressed to a time subsequent to the arrest of the defendant. Even though the jury did so understand it, we think the point was waived. Later, after the prosecution had closed its case, the defendant took the stand. One of the first questions addressed to him by his attorney was, "Q. In the action of *Ryan* v. *Zero,* have you ever deposited that money in court? A. I did not."

[5] In instructing the jury the trial court read section 512 of the Penal Code. The appellant now claims that in so doing the trial court committed error, as the reading had the effect of instructing them concerning matters of fact, contrary to the constitutional inhibition. This contention is not clear. On the contrary, the instruction was a part of the law of this state and did not purport to state facts and no error was committed by reading it to the jury. [6] The appellant asked an instruction to which the trial court added the language which we have italicized and then gave it to the jury: "You are instructed that if no proof has been introduced of a demand having been made upon the defendant by Mr. Jack Zero, or his wife, *or anyone acting under their authority,* for the return of the $300 then you will acquit the defendant." There was no error in altering the instruction. After it was altered the instruction was more favorable to the appellant

than the appellant was entitled to. It implied that proof of a demand is always necessary in every embezzlement case. That is not the law. (*People* v. *Ward*, 134 Cal. 301 [66 Pac. 372]; *Ex parte Vice*, 5 Cal. App. 153, 156, 157 [89 Pac. 983].)

The judgment and order are affirmed.

Langdon, P. J., and Nourse, J., concurred.