[Crim. No. 1339.   Second Appellate District, Division One.—December 14, 1926.]

## THE PEOPLE, Respondent, v. A. H. WOOLLACOTT, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT—FAILURE TO TURN OVER MONEY—EVIDENCE—INSTRUCTIONS.—In this prosecution for embezzlement, the trial court did not err in refusing defendant's requested instruction to the effect that mere neglect to pay over money, or to hand over security or property, is not sufficient evidence in itself of fraudulent conversion thereof to one's own use, "for there may be losses and failure to pay where a failure is due to misfortune or from other causes not criminal," where there was no evidence on which such instruction could have been predicated; and, furthermore, such instruction was objectionable in that it requested the court to give the reasons on which it was based.

[2] ID.—INSTRUCTION CONTAINING ERRONEOUS PROPOSITION.—Where a requested instruction is offered as a whole, and any proposition contained therein ought not to have been given, the court is justified in refusing the whole instruction.

[3] ID.—ENTRUSTING MONEY NOT UNLAWFUL PURPOSE—EMBEZZLEMENT—INSTRUCTIONS.—Although the money may have been given by the complaining witness and received by defendant to accomplish

2.  See 8 Cal. Jur. 316; 14 R. C. L. 800.

3.  Embezzlement of property used for illegal purpose, note, 87 Am. St. Rep. 23.

an act declared unlawful by section 26 of article IV of the constitution, the embezzlement of the money by defendant was criminal; and, in this prosecution for embezzlement, the trial court properly refused defendant's requested instruction as to the character of the transaction between defendant and the complaining witness.

[4] Id.—Unlawful Transaction — Instructions. — In such prosecution for embezzlement, the trial court properly refused defendant's requested instruction based upon defendant's contention that the transaction between him and the complaining witness was unlawful.

[5] Id. — Evidence — Exhibit from Ledger—Presumption as to Correctness.—In such prosecution, the trial court did not err in admitting in evidence a document taken from the files of a certain stock brokerage firm showing all transactions in grain had by defendant with that company, where the latter was not a party to the case, and it had been proven that the ledger from which the exhibit was taken was kept in the custody of the witness verifying it, and constituted the company's record of all grain transactions with all its customers, and was made under that witness' supervision, and the entries were otherwise sufficiently verified, and the ledger itself was present in court; and such exhibits having been records required by law to be kept by all corporations for profit, they were presumed to be correct, unless impeached.

[6] Id.—Bank Deposit—Ledger Sheets—Evidence.—In such prosecution for embezzlement, defendant having claimed that he had money of the complaining witness on deposit in a certain bank in the name of a company bearing defendant's name, the trial court did not err in admitting in evidence, in rebuttal, the individual ledger account of said company with said bank, after it had been proven that the ledger account was the original ledger showing the original ledger sheets of said company which was kept in the vault of the bank.

[7] Id.—Person Entrusted—Use of Company Name—Evidence.—In such prosecution, there was no merit in defendant's contention that there was no embezzlement by defendant, because the moneys alleged to have been embezzled by him were not entrusted to him, but to a corporation bearing his name, where the evidence showed that the complaining witnesses dealt entirely with defendant in the transactions, that he was the person entrusted, and that he controlled and handled the money transferred to him, in the same manner as though the corporation bearing his name had nothing to do with it.

[8] Id.—Indictment — Pleading — Separate Offenses—Joinder.—In such prosecution, the fact that the indictment charged two distinct

and separate offenses not in any manner connected or arising out of the same transaction, and brought by two complaining witnesses and each requiring two different lines of evidence and witnesses to support the same, did not render the indictment objectionable; and while the trial court could have ordered the two counts of the indictment tried separately, it was not required to do so, and defendant could not complain on appeal that such order was not made.

(1) 16 C. J., p. 1036, n. 62, p. 1045, n. 39; 20 C. J., p. 489, n. 74, 76, 78.    (2) 16 C. J., p. 1066, n. 89.    (3) 20 C. J., p. 418, n. 68. (4) 20 C. J., p. 490, n. 89.    (5) 16 C. J., p. 542, n. 14 New; 20 C. J., p. 482, n. 39.    (6) 16 C. J., p. 867, n. 25.    (7) 20 C. J., p. 423, n. 97 New.    (8) 16 C. J., p. 782, n. 36; 17 C. J., p. 61, n. 65; 20 C. J., p. 486, n. 60.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Edwin F. Hahn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hewitt, Ford, Crump & Penn and Homer C. Mills for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and Warner I. Praul for Respondent.

YORK, J.—Count I of the indictment charged that the defendant embezzled $9,844.88, in money, personal property of S. N. Bonsall.

In count V of the indictment the defendant was charged with having embezzled $3,850, in money, belonging to one S. C. McClung.

[1] The first point made on behalf of appellant is that the court erred in not giving defendant's instruction number two. The refusal to give this instruction was not error. The request was that the court instruct the jury that mere neglect to pay over money, or to hand over security or property, is not sufficient evidence in itself of fraudulent conversion thereof to one's own use, "for there may be losses and failure to pay where a failure is due to misfortune or from other causes not criminal." There was no evidence on which this instruction could have been predi-

cated and hence the instruction would have been misleading. The requested instruction is also objectionable in that it requests the court to give the reasons on which the requested instruction is based. The instructions to a jury should not be argumentative. The trial judge is responsible for the instructions, and it is not for the jury to review them—hence the judge's reasons in support of the instructions would not only be surplusage, but often confusing to the jury. [2] Where a requested instruction is offered as a whole, and any proposition contained therein ought not to have been given, the court is justified in refusing the whole instruction. (*Williamson* v. *Tobey*, 86 Cal. 497 [25 Pac. 65]; *Wiley* v. *Young*, 178 Cal. 681, 683 [174 Pac. 316].

[3] Appellant's second point pertains to the refusal of a requested instruction as to the character of the transactions between appellant and McClung, and is based upon the unlawfulness of the transaction under the provisions of article IV, section 26, of our state constitution. Whatever our opinion may be as to the merit of this proposed instruction, we hold that it is the settled law of this state that although the money may have been given and received to accomplish an unlawful purpose the embezzlement of it by the receiver is criminal. (*People* v. *Ward*, 134 Cal. 310 [66 Pac. 372]; *People* v. *Martin*, 102 Cal. 558 [36 Pac. 952].)

[4] Appellant's third point is that the court erred in refusing to give appellant's instruction number six. This requested instruction is based upon the appellant's contention that the transaction between appellant and McClung was unlawful. The instruction was correctly refused on the doctrine announced in *People* v. *Ward, supra.*

[5] Appellant's fourth point is that the court erred in admitting exhibit number 22 in evidence. This was a document taken from the files of Hutton & Company showing all transactions in grain had by appellant with that company. It had been proven that the ledger from which the exhibit was taken was kept in the custody of the witness verifying it, and constituted that company's record of all grain transactions with all its customers, and was made under that witness' supervision, and that the entries were otherwise sufficiently verified. The ledger itself was present

in court. Hutton & Company were not parties to the action. The exhibits were records of the business transactions of a corporation required by law to be kept by all corporations for profit. (*Hurwitz* v. *Gross,* 5 Cal. App. 620 [91 Pac. 109]; sec. 377, Civ. Code.) Having been so made, unless impeached, they are presumed to be correct. Therefore, the court did not err in admitting the same.
[6] The same conclusion follows, in relation to appellant's fifth point, that the court erred in admitting in evidence exhibit 23 purporting to be an individual ledger account of A. H. Woollacott Company with the Hellman Commercial Trust and Savings Bank. This was in rebuttal of appellant's claim that he had money of the complaining witness on deposit in that bank in the name of A. H. Woollacott Company. It had been proven that the ledger account was the original ledger showing the original ledger sheets of Woollacott Company which were kept in the vault of the bank. It had been shown that the complaining witness had been dealing indiscriminately with A. H. Woollacott and with A. H. Woollacott Company, and the account had been kept at the bank by A. H. Woollacott in the name of A. H. Woollacott Company.

In reply to the brief filed in behalf of the state, a reply brief was filed in which other points in support of appellant's appeal were made. All the material points made in the reply brief had been made in the opening brief in a more condensed form. [7] One of the additional points made was that there was no embezzlement by appellant, because the moneys alleged to have been embezzled by appellant were not entrusted to him, but to A. H. Woollacott Company, a corporation. But the evidence shows that the complaining witnesses dealt entirely with appellant in the transactions and that he controlled and handled the moneys they transferred to him, in the same manner as though A. H. Woollacott Company had had nothing to do with it. He was the person entrusted, and the only person who appeared to have anything to do with obtaining the moneys or disposing of them. We therefore hold that the embezzlement proven in this case was committed by defendant personally, and that he is as responsible for it as he would have been if A. H. Woollacott Company had not been mentioned in the transaction. It is apparent that the facts of this

case do not bring it within the rule announced in *Ballew* v. *State*, 11 Okl. Cr. 598 [149 Pac. 1070]. There it was charged that the defendant, cashier of a bank, embezzled funds of the bank's customer. The court held that the information was defective in that it alleged embezzlement of the funds of the customer, whereas it should have alleged embezzlement of the funds of the bank, because it appeared on the face of the information that the money embezzled was the bank's property, and was under defendant's control as cashier.

[8] Appellant contends that the indictment was not direct and certain in that it charges two distinct and separate offenses not in any manner connected or arising out of the same transaction, and brought by two complaining witnesses and each requiring two different lines of evidence and witnesses to support the same. In appellant's reply brief only has this point been raised. But section 954 of the Penal Code provides that the indictment or information may charge two or more different offenses of the same *class* of crimes or offenses under separate counts. The court, under that section, could have ordered the two counts of the indictment tried separately, but was not required to do so, and it is now too late to complain that such order was not made.

As to count I of the indictment, it appears from the evidence that on August 8, 1924, Bonsall gave appellant a check for $10,000 with instructions to immediately deposit the whole of said sum with E. F. Hutton & Company, in the name of A. H. Woollacott Company, for the purpose of opening up a special grain account and to secure any trades that Bonsall might make from time to time. Appellant was to buy and sell grain for Bonsall through this account, subject to the authorization of Bonsall. Thereafter, on October 8, 1924, Bonsall gave appellant a check in the sum of $2,000 to be deposited with E. F. Hutton & Company in order to strengthen his grain account, and again on October 10, 1924, he gave appellant another check in the sum of $1,500 for the same purpose. Between August 8th and December 10th Bonsall instructed appellant to make fifteen or twenty trades for him through E. F. Hutton & Company, and on or about the 12th of November Bonsall informed appellant that he, Bonsall, had

discovered that no more than $5,000 of his money had been deposited as directed. Upon demand being made of appellant as to the whereabouts of the balance, amounting to approximately $10,000, appellant stated to Bonsall that this money was on deposit in the Hellman Bank. After conversation as to the bank account being attached, appellant informed Bonsall that the money was on deposit over at the Commercial Trust and Savings Bank and that that was unattached. Appellant also stated that $5,000 of Bonsall's money was attached at Hutton & Company and then stated that there was $11,000 over at the said Commercial Trust and Savings Bank.

After Bonsall made an investigation and reported to appellant that there was no money at that bank, in any such account, Bonsall states that appellant told him that he had used the money. Bonsall made several trips to the office of appellant to receive the money, but it was never at any time paid to him. On each of these occasions appellant would request him to come back again. With the exception of a few dollars over $300, Bonsall never received any part of the $13,500 which he turned over to appellant. On November 30th appellant, in writing, admitted a credit to the account of Bonsall in the sum alleged to have been embezzled in count I of the indictment.

Deputy District Attorney Ryan, in his evidence, testified that when he asked appellant whether he owed Bonsall this money, that the appellant stated to him that he did owe it, but that he did not have it to return, that he had spent it in gambling in Tia Juana.

The original record of E. F. Hutton & Company, admitted in evidence after being identified by the employee of said company who made the same, showed that no more than $4,500 had been deposited by appellant. Receipts also were filed as exhibits herein, and after having been identified by the assistant cashier of E. F. Hutton & Company, after the statement that they were in his handwriting. These receipts were issued in the regular course of business and were part of the permanent records of E. F. Hutton & Company. In each instance where records of A. F. Hutton & Company were introduced in evidence they were either introduced by the man who made the same or by the clerks who were employees of said company. The

clerks, in each instance, testified that they were the original records of the company. An examination of these exhibits reveals that the appellant did not comply with Bonsall's instructions relative to deposit of the latter's money with E. F. Hutton & Company. According to the exhibits filed, appellant's balance at no time amounted to as much as $7,000.

The original ledger sheets of appellant's account with the Hellman Bank were identified by the head bookkeeper for the bank and received in evidence. They show that on August 8, 1924, appellant deposited $10,000; on October 8, 1924, $2,000; on October 10, 1924, $1,500; these being the dates that Bonsall gave appellant checks for the sums of money identical with the amounts deposited.

It would make no difference that these amounts were deposited with appellant for the purpose of entering into an illegal transaction, or a strictly legal one; or whether it was for the purchase of grain on a margin; or whether it was for the purpose of buying or selling grain short; or whether it was buying stocks or grain on installments, for the money was still the money of Bonsall until it was expended as he directed. It has been held in *People* v. *Ward,* 134 Cal. 301, at page 309 [66 Pac. 372, 375]: "It is also contended by appellant that as the authority given by the Union for the withdrawal of the money from the bank was for the fraudulent purpose of hindering and delaying its creditors, a conversion of it by the defendant did not constitute embezzlement, and that the court erred in not instructing the jury to that effect, as requested. The instruction was properly refused. The Union, by authorizing the withdrawal of the deposit, did not part with its ownership of the money, nor pretend or attempt to do so. As between it and its agent, to whom the money was entrusted, there can be no question as to its ownership. In *Commonwealth* v. *Cooper,* 130 Mass. 285, it was held to be no defense to an indictment for the embezzlement of the money, that it was entrusted to the defendant for an illegal purpose. (See, also, *Commonwealth* v. *Smith,* 129 Mass. 111; *State* v. *Shadd,* 80 Mo. 358; *State* v. *May,* 20 Iowa, 305; *State* v. *Tumey,* 81 Ind. 559; *People* v. *Martin,* 102 Cal. 558 [36 Pac. 952]." (See, also, *People* v. *Edwards,* 72 Cal. App. 121, 122 [236 Pac. 944].) One of the principal

objections of the appellant which he is urging is that the court erred in refusing to give instructions directly contrary to the above rule as set forth.

The evidence in this case clearly discloses the fact that the appellant and A. H. Woollacott Company were substantially one and the same; that that was the name under which he was transacting business, using sometimes his own name and sometimes using the name of A. H. Woollacott Company without making any distinction between his own individual name and that of the corporation.

The same reasoning would apply to each of the objections made by the appellant to the introduction of evidence and the refusal of instructions as to count V of the indictment, excepting the conversation had with Ryan and Bonsall. From the conversation had between appellant and McClung, in reference to the money referred to in the fifth count of the indictment, it appears from the evidence that about April 1, 1925, appellant confessed to McClung that he had not bought the stocks in question, but instead had lost McClung's money in personal and unauthorized speculations. And again, in the first part of May, 1926, McClung and appellant discussed the dealings and appellant stated that he had been involved in similar trouble in 1920 and 1921 and did not wish to have McClung make him any further trouble now. Appellant stated to McClung at that time that he, McClung, had been very lenient with him up to that time and that he appreciated it as he realized that he could have put him in jail at any time that he wanted to. McClung, however, in spite of the promises of appellant to reimburse him, never received any part or portion of the $3,850, which he acknowledged was due to McClung as representing the amount due from appellant to McClung on March 18, 1925. At the time that appellant admitted that he owed the sum of $3,850 to McClung, he represented to ·McClung that the stocks which had been attached, and which were referred to in the written acknowledgment— acknowledging the sum of $3,850 to be due—were all intact, and that it was only by reason of the attachment which he said had been levied that he was unable to make delivery of them. Later, however, on April 1, 1925, appellant confessed to McClung that he had not bought the stocks in

question, but stated to him that he had lost McClung's money in personal and unauthorized speculations.

Therefore, it appears to us that the evidence was sufficient to support the verdict, and there are no errors of law justifying a reversal.

Judgment and order affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 10, 1927.