*409
 
 Opinion
 

 POTTER, J.
 

 Helena Rubenstein International, dba People’s Lobby, and Joyce Koupal (hereinafter collectively called appellants) appeal from orders of dismissal after trial courts sustained demurrers without leave to amend in the mandamus (2d Civ. No. 45770) and taxpayers’ (2d Civ. No. 46036) actions consolidated herein. At issue is the meaning of “convicted” or “conviction”
 
 [1]
 
 under California law for purposes of exclusion from public office.
 

 On July 27, 1974, the Lieutenant Governor of California, Ed Reinecke, was found guilty of perjury (18 U.S.C. § 1621) by a jury in the United States District Court for the District of Columbia.
 

 On July 29, appellants filed a taxpayers’ action (Code Civ. Proc., § 526a) against respondents Reinecke, Controller Houston Flournoy and the State of California to enjoin the payment of Reinecke’s salary and to require him to return to the state any compensation received after July 27. Appellants also requested respondent Attorney General Younger to initiate quo warranto proceedings (Code Civ. Proc., § 803) to remove Reinecke from office. Appellants claimed that rendition of the jury verdict disqualified Reinecke from holding office and receiving a salary because the jury verdict constituted a “conviction” under the provision of the California Constitution and implementing legislation providing for exclusion from office of persons “convicted” of perjury.
 

 On that same day, Governor Ronald Reagan requested respondent Attorney General to render “an official written opinion” on the meaning of “conviction” and its effect on Reinecke’s status. On August 1, the Attorney General issued his opinion. The opinion basically concluded that a guilty verdict was not a “conviction” for the purpose of exclusion from public office and that until a judgment was rendered, Reinecke would not be convicted and would be entitled to remain in office and receive his salary. (See 57 Ops. Cal.Atty. Gen. 374 (1974).)
 

 On August 2, the Attorney General informed appellants he would not institute quo warranto proceedings as requested. On August 5, appellants then applied to the Attorney General for leave to sue Reinecke in quo warranto (Code Civ. Proc., § 803; tit. 11, Cal. Admin. Code). Their request was denied on August 12.
 

 
 *410
 
 The following day, appellants filed with the Supreme Court an original petition for writ of mandate to compel the Attorney General to grant appellants leave to sue Reinecke in quo warranto. In their papers filed with the court, both parties stressed that the issue was one of law. On August 28, the Supreme Court refused to hear the case. It issued an “Order Denying Alternative Writ.” The order stated in full: “Petition for writ of mandate denied. This order is final forthwith.”
 

 On September 5, appellants filed in the Superior Court of Los Angeles County a petition for writ of mandate involving the identical parties and seeking the same relief as was sought in the Supreme Court. Respondents Reinecke and Attorney General Younger filed answers. The Attorney General also filed a demurrer. On September 16, Judge Lucas sustained the demurrer without leave to amend on the ground that the Supreme Court’s denial of the alternative writ of mandate was “a decision on the merits and the matter in this court [was] res judicata.” On September 17, appellants filed their appeal (2d Civ. No. 45770) from the ensuing order of dismissal in the mandate proceeding.
 

 On September 27, Reinecke’s motions for a judgment of acquittal, a new trial and arrest of judgment were denied by the federal district court. On October 2, Reinecke was sentenced
 
 [2]
 
 (placed on probation). Upon sentencing, he resigned from all public offices.
 

 On October 21, respondents Reinecke, Flournoy and the State of California demurred and moved to strike portions of appellants’ taxpayers’ suit. On November 1, Judge Goebel sustained the demurrer without leave to amend
 
 [3]
 
 on the ground that “[f]or purposes of Article XX, Section 11 of California Constitution and Government Code Sections 1021 and 3000, ‘conviction’ is as defined in Government Code Section 1770(h), to wit, ‘when trial court judgment is entered.’ ” On November 13, 1974, appellants filed their appeal (2d Civ. No. 46036) from the ensuing order of dismissal of the taxpayers’ proceeding.
 

 
 *411
 
 The sole substantive issue presented here is whether Reinecke was “convicted” within the meaning of the applicable California constitutional provision (former art. XX, § 11) and relevant implementing statutes for the purpose of exclusion from holding public office upon the rendition of the jury verdict, as appellants contend, or the judgment, as respondents contend.
 

 We conclude, for the reasons that follow, that “conviction” so as to exclude from public office does not occur until rendition of judgment following the verdict. We, therefore, affirm the judgments (orders of dismissal) of the trial courts.
 

 Discussion
 

 Prior to discussing the main issue, we must dispose of two preliminary procedural issues. Respondents contend that the proceedings (1) are moot, and (2) are barred by the doctrine of res judicata.
 
 [4]
 
 We disagree.
 

 The Proceedings Are Not Moot
 

 The issue of when a person is “convicted” of a crime for the purpose of exclusion from public office is of general public interest and is likely to recur. Accordingly, these proceedings are not rendered moot by the fact that Reinecke no longer holds the office of Lieutenant Governor.
 
 (Fields
 
 v.
 
 Eu,
 
 18 Cal.3d 322, 325 [134 Cal.Rptr. 367, 556 P.2d 729].)
 

 The Denial of the Writ by the Supreme Court Is Not Res Judicata
 

 Respondents’ contention that the Supreme Court’s denial of the writ is res judicata is untenable. In
 
 People
 
 v.
 
 Medina,
 
 6 Cal.3d 484, 491, footnote 6 [99 Cal.Rptr. 630, 492 P.2d 686], our Supreme Court noted that “[t]he denial without opinion of a petition for writ of mandate ... is not res judicata except when the sole possible ground of denial was on the merits or it affirmatively appears that the denial was intended to be
 
 *412
 
 on the merits.” Here, the Supreme Court summarily denied the petition; it did not issue an alternative writ or order to show cause and did not hear the matter and render a written opinion on the merits. There were other possible reasons for the denial. As a matter of judicial policy, the Supreme Court usually refuses to exercise its original jurisdiction where, as here, the proceeding can be brought in the first instance in a lower court in order “to encourage the filing of petitions for extraordinary writs in the superior court.”
 
 (Friends of Mammoth
 
 v.
 
 Board of Supervisors,
 
 8 Cal.3d 247, 269 [104 Cal.Rptr. 761, 502 P.2d 1049].)
 
 [5]
 
 The order denying the alternative writ merely stated: “Petition for writ of mandate denied. This order is final forthwith.” We do not consider this statement “affirmative proof’ that the Supreme Court “intended” this denial to be res judicata of the merits of the issues raised.
 

 Reinecke Was Not “Convicted” Until the Judgment Was Entered
 

 At all times relevant to this proceeding, article XX, section 11 of the California Constitution provided in pertinent part:
 
 [6]
 
 “Laws shall be made to exclude from office, serving on juries, and from the right of suffrage, persons convicted of bribery, perjury, forgery, malfeasance in office, or other high crimes....” This provision of the 1879 Constitution was originally enacted in the 1849 Constitution as article XI, section 18.
 

 The Legislature has enacted various statutes to implement the exclusion from public office. Government Code section 1021 provides: “A person is disqualified from holding any office upon conviction of designated crimes as specified in the Constitution and laws of the State.”
 
 *413
 
 Section 3000 of the Government Code states: “An officer forfeits his office upon conviction of designated crimes as specified in the Constitution and laws of the State.” Section 1770, as amended in 1971, provides in pertinent part:
 

 “An office becomes vacant on the happening of any of the following events before the expiration of the term:
 

 “(h) His conviction of a felony or of any offense involving a violation of his official duties. An officer shall be deemed to have been convicted under this subdivision when trial court judgment is entered.”
 

 Section 1770, subdivision (h) is the only section which purports to define at which point a “conviction” occurs. By its passage, the Legislature has determined that, for the purpose of exclusion, a public officer is “convicted” when a judgment is entered.
 

 Appellants, however, contend that a person stands “convicted” for purposes of exclusion from office as soon as the jury returns a verdict. They assert that the legal meaning of “conviction” was well settled before the adoption of the Constitution in 1879 and, therefore, the language in the constitutional provision must be construed accordingly. Appellants apparently do not directly attack the constitutionality of section 1770, subdivision (h), as amended. Rather, they claim that in order to interpret that section constitutionally, the occurrence of a vacancy for purposes of replacement must be distinguished from the disqualification from office which occurs immediately upon the verdict. We disagree.
 

 Contrary to appellants’ contention, the term “conviction” has historically had, and continues to have, at least two accepted meanings: (1) the jury verdict, and (2) the judgment following the verdict.
 

 Appellants cite Blackstone’s Commentaries on the Common Law and Mr. Justice Story in support of their claim to one well-settled meaning for the term “conviction.” Blackstone said: “ ‘If the jury find him [the prisoner] guilty, he is then said to be
 
 convicted
 
 of the crime whereof he stands indicted; which conviction may occur two ways: either by his confessing the offense and pleading guilty, or by his being found so by the verdict of his country.’ (4 Black. Com. 262.)”
 
 (Ex Parte Brown,
 
 68 Cal. 176, 178 [8 P. 829].)
 

 
 *414
 
 In
 
 United States
 
 v.
 
 Gilbert,
 
 2 Sumn. 19, 40, Mr. Justice Story said: “ ‘And here, in order to avoid ambiguity, it may be proper to state that conviction does not mean the judgment passed upon the verdict; but if the jury find him (the party) guilty, he is then said to be convicted of the crime whereof he stands indicted.’ ”
 
 (People
 
 v.
 
 Ward,
 
 134 Cal. 301, 308 [66 P. 372].)
 

 That definition, however, was not the only meaning, or even the accepted meaning for all purposes. There was no one uniform common law (or case law) definition of when “conviction” occurred. Thus, as the West Virginia Supreme Court pointed out in discussing the meaning of “conviction” in an 1872 constitutional provision vacating county office “upon conviction” of the officer: “The word ‘conviction’ in its primary sense refers to a verdict of guilty by a jury. But whenever
 
 a conviction
 
 is declared to work some disability, the word is generally given a broader significance. The common law in this respect, as voiced by Lord Hale, follows: ‘By
 
 conviction
 
 I conceive is intended not barely a conviction by verdict where no judgment is given, but it must be a conviction by judgment.’ 1 Hale P. C. 686. . . .”
 
 (State
 
 v.
 
 Levi
 
 (1930) 109 W.Va. 277 [153 S.E. 587, 588].) The West Virginia court, relying upon the common law and the 1851 Virginia Constitution, then held that the word “conviction” as used in its Constitution as a ground for removal from public office implied “both a verdict of guilty and the sentence of the court thereon.”
 
 (Ibid.)
 

 The 1872 case of
 
 Commonwealth
 
 v.
 
 Lockwood,
 
 109 Mass. 323, illustrates the fact that “conviction” even had different meanings in different provisions within the same constitution. Thus, the Massachusetts Supreme Court held that “conviction” meant the verdict in a constitutional provision authorizing pardons after conviction but indicated that in the provision calling for disqualification from public office, it meant the judgment. The court explained
 
 (id.,
 
 at p. 329): “When indeed the word ‘conviction’ is used to describe the effect of the guilt of the accused as judicially proved in one case, when pleaded or given in evidence in another, it is sometimes used in a more comprehensive sense, including the judgment of the court upon the verdict or confession of guilt; as, for instance, in speaking ... of the effect of guilt, judicially ascertained, as a disqualification of the convict.”
 

 In
 
 Smith
 
 v.
 
 Commonwealth
 
 (1922) 134 Va. 589 [113 S.E. 707, 24 A.L.R. 1286], the Virginia Supreme Court held that a judgment of conviction was required under a statute providing for removal of officers “convicted” of an offense involving moral turpitude. In
 
 Commonwealth
 
 v.
 
 *415
 

 Reading
 
 (1939) 336 Pa. 165 [6 A.2d 776], the Pennsylvania Supreme Court held, inter alia, that a final judgment or sentence was necessary to remove an officer pursuant to a constitutional provision forbidding a person convicted of an infamous crime from holding office.
 

 We do not mean to imply that there are no decisions in other jurisdictions equating a “conviction” for purposes of exclusion from public office with the determination of guilt by a verdict or plea of guilty. The cases on the meaning of “conviction” as a ground for the disqualification for, removal from, or vacancy in public office are not in agreement over the necessity of a judgment. (See Annot. (1960) 71 A.L.R.2d 593.) The existence of this split of authority, however, indicates that there was no universally accepted rule equating “conviction” and the verdict at the time the California constitutional provision was adopted.
 

 In California, as in other jurisdictions, “the word ‘conviction’ has been used with varying meanings.”
 
 (Truchon
 
 v.
 
 Toomey,
 
 116 Cal.App.2d 736, 740 [254 P.2d 638, 36 A.L.R.2d 1230].) Appellants cite the 1867 decision in
 
 People
 
 v.
 
 Goldstein, 32
 
 Cal. 432, and the 1885 decision in
 
 Ex Parte Brown,
 
 68 Cal. 176 [8 P. 829], as proof that “conviction” at the time of the adoption of the 1879 constitutional provision had one settled meaning, to wit, the verdict. In
 
 Goldstein,
 
 the court held that the defendant’s plea of former “conviction” was a good defense although no judgment had, as yet, been pronounced. In
 
 Brown,
 
 the court construed the word “conviction” in the statute concerning admission to bail pending appeal (Pen. Code, § 1272) .as signifying a finding of guilt. The
 
 Brown
 
 court pointed out that “[t]he ordinary meaning of this word is the finding by a jury of a verdict that the accused is guilty. ...” (68 Cal. at p. 178.) The court, however, also noted that “[i]n legal parlance, it often signifies the final judgment of the court. ...”
 
 (Ibid.)
 
 After reviewing the authorities, the court further stated
 
 (id.,
 
 at p. 180): “Now, while the word may be used as signifying the sentence pronounced on the verdict, or the record of conviction, including
 
 inter alia
 
 the verdict and sentence, still such meaning ought not to be attributed to it, unless there is something in the context to indicate that it was used in such sense, ...” The court concluded that in the Penal Code provision at issue “conviction” was used in its “ordinary” sense.
 

 The following year, in
 
 People
 
 v.
 
 Rodrigo,
 
 69 Cal. 601 [11 P. 481], the court again recognized that there was more than one meaning for the term. The
 
 Rodrigo
 
 court explained
 
 (id.,
 
 at pp. 605-606): “ ‘Conviction’ is usually defined the legal proceeding of record which ascertains the guilt
 
 *416
 
 of the party and upon which the sentence or judgment is founded. (Bouvier’s Law Dict.) The term is sometimes applied to the finding of a person guilty by verdict of a jury. (1 Bishop’s Crim. L. 223.) But it is sometimes used to denote final judgment. (Bouvier; Dwarris’s Stat., 2d ed., 683.)”
 

 In
 
 People
 
 v.
 
 Ward,
 
 134 Cal. 301 [66 P. 372], cited by appellants, the court held that for purposes of impeachment of the credibility of a witness (former Code Civ. Proc., § 2051), “the verdict of guilty constituted a ‘conviction’ ”
 
 (id.,
 
 at p. 307). The
 
 Ward
 
 court stated: “That such verdict does constitute a conviction, within the ordinary as well as the technical meaning of the word, seems to be well settled.”
 
 (Ibid.)
 
 The court, however, specifically distinguished the meaning of “conviction” for purposes of impeachment of the credibility of a witness from “conviction” for purposes of incompetency of a witness which required, at common law, a judgment.
 

 People
 
 v.
 
 Clapp, 67
 
 Cal.App.2d 197, 200 [153 P.2d 758], citing
 
 Ward,
 
 stated: “Conviction does not mean the judgment based upon the verdict, but it is the verdict itself.
 
 (People
 
 v.
 
 Ward)
 
 [134 Cal. at p. 308].” The actual holding of
 
 Clapp,
 
 however, did not involve the question of whether conviction meant the verdict or the judgment. In
 
 Clapp,
 
 the court upheld the sufficiency of a charge of prior conviction to enhance punishment (see Pen. Code, §§ 969, 969a) against defendant’s claim that “he had not been convicted because his
 
 judgment
 
 of conviction in the former case was on appeal.” (67 Cal.App.2d at p. 200.) (Italics added.)
 

 For purposes of disbarment, however, our Supreme Court has consistently construed “conviction” as requiring a “final judgment,” not a verdict. In 1885, the court, in
 
 People
 
 v.
 
 Treadwell,
 
 66 Cal. 400, 401 [5 P. 686], held that during the pendency of an appeal, “there is not such a final conviction against the defendant as the law contemplates to justify his removal, .. .” and, therefore, disbarment proceedings could not be commenced. This meaning was reaffirmed in 1920 by the court in
 
 In re Riccardi,
 
 182 Cal. 675 [189 P. 694], construing the same statutes
 
 (former
 
 Code Civ. Proc., §§ 287-289) providing for disbarment upon “conviction” of a felony involving moral turpitude. In support of its interpretation that a verdict was not sufficient, the court discussed, among other things, the apparent legislative intent, settled construction of the statutes, and the dire collateral consequences of an “absolute” disbarment depriving an attorney of a valuable property right.
 
 (Id.,
 
 at p. 679.)
 

 
 *417
 
 In
 
 McKannay
 
 v.
 
 Horton,
 
 151 Cal. 711 [91 P. 598], the specific question was whether after verdict and judgment, but while an appeal was pending, a person (the mayor) was convicted of a felony for purposes of automatic removal from office within the meaning of identical provisions on vacancy in the San Francisco charter and the state law (former Pol. Code, § 996). The court held he was. The case is authority for the proposition not disputed nor decided herein that “conviction” for purposes of declaring a vacancy occurs as soon as the judgment is entered, despite the pendency of an appeal. The majority stated that it was “not required to decide in this case that the entry of a verdict of guilty constitutes a ‘conviction.’ ”
 
 (Id.,
 
 at p. 718.) However, they describe the removal from office as “a consequence which flows”
 
 (id.,
 
 at p. 720) from the “judgment of conviction”
 
 (ibid.).
 
 But three concurring justices categorically stated that the verdict constitutes a conviction.
 
 (Id.,
 
 at p. 722.)
 

 California constitutional provisions, other than article XX, section 11, employing the terms “convicted” or “conviction” have been construed in California decisions. In
 
 In re Anderson,
 
 34 Cal.App.2d 48 [92 P.2d 1020], the appellate court construed “conviction” as meaning the verdict when used in the constitutional provision empowering the governor to grant pardons “after conviction.”
 
 [7]
 
 The
 
 Anderson
 
 court ruled that conviction in that article should be accorded its “normal popular meaning [the verdict].”
 
 (Id.,
 
 at p. 51.) It distinguished
 
 Riccardi
 
 because of the “peculiar consequences that would follow”
 
 (id.,
 
 at p. 54) if such interpretation were applied in the disbarment situation.
 

 In
 
 Truchon
 
 v.
 
 Toomey, supra,
 
 116 Cal.App.2d 736, the court construed a different constitutional provision (former art. II, § 1) and reached the contrary result that judgment was required. At issue was the meaning of “conviction” for purposes of disfranchisement.
 
 [8]
 
 The court held that judgment and sentence were necessary before a person was “convicted” within the meaning of the constitutional provision declaring that no person convicted of any infamous crime shall exercise the right of an elector.
 
 Truchon
 
 reviewed authorities in California and elsewhere, including the leading New York case of
 
 People
 
 v.
 
 Fabian
 
 (1908) 192 N.Y. 443 [85 N.E. 672], and concluded that: (1) conviction had various meanings—the ordinary meaning of verdict and the'technical meaning
 
 *418
 
 of judgment; and (2) “ ‘[t]he general rule where conviction results in civil penalties and disabilities is that conviction takes the technical meaning of verdict plus judgment.’ ” (116 Cal.App.2d at p. 745.)
 
 Truchon
 
 distinguished
 
 Anderson,
 
 pointing out there was no real conflict because the philosophy concerning pardons is different froni that concerning the imposition of a serious disability.
 

 From the foregoing, we conclude that the terms “convicted” and “conviction” have not had a fixed single meaning in California law. In the context of statutes or constitutional provisions imposing civil penalties or disabilities, they have never been construed to mean the verdict of guilt. Such penalties or disabilities have not been found applicable until at least a court judgment has been entered. The California decisions are in this respect in accord with the weight of authority in other jurisdictions. As the Supreme Court of Oregon recently stated: “Where civil penalties and disabilities are involved ... a large majority of jurisdictions accept the technical meaning of ‘conviction’ and hold that conviction takes place only after a determination of guilt and a pronouncement of the judgment of the court. [Citations.]” (
 
 Vasquez
 
 v.
 
 Courtney
 
 (1975) 272 Ore. 477 [537 P.2d 536, 537].)
 

 We consider disqualification from public office a significant civil disability. In California, the right to hold public office has long been recognized as a valuable right of citizenship. In 1869, in
 
 People
 
 v.
 
 Washington,
 
 36 Cal. 658, 662, our Supreme Court declared that “[t]he elective franchise and the right to hold public offices constitute the principal political rights of citizens of the several States.” In
 
 Carter
 
 v.
 
 Com. on Qualifications etc.,
 
 14 Cal.2d 179, 182 [93 P.2d 140], the court pointed out: “[T]he right to hold public office, either by election or appointment, is one of the valuable rights of citizenship .. .
 
 The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office. . .
 
 .” (Italics added.) More recently, the high court, citing
 
 Carter,
 
 has termed the right to hold public office a “fundamental right.”
 
 (Zeilenga
 
 v.
 
 Nelson, 4
 
 Cal.3d 716, 720 [94 Cal.Rptr. 602, 484 P.2d 578];
 
 Fort v. Civil Service Commission,
 
 61 Cal.2d 331, 335 [38 Cal.Rptr. 625, 392 P.2d 385].) Thus, any ambiguity in a constitutional provision calling for forfeiture of an existing office and disqualification from holding public office should be resolved in favor of continued eligibility. When this is done, article XX, section II of our Constitution, which is ambiguous, can reasonably be construed as authorizing the Legislature
 
 *419
 
 to enact legislation providing that forfeiture and exclusion from public office shall be effective upon entiy of a judgment of conviction.
 

 Such being the case, cognizance must be taken of the rule stated by our Supreme Court in
 
 Methodist Hosp. of Sacramento
 
 v.
 
 Saylor,
 
 5 Cal.3d 685, 693 [97 Cal.Rptr. 1, 488 P.2d 161], where the court said (quoting
 
 Pacific Indemnity Co.
 
 v.
 
 Indus. Acc. Com.,
 
 215 Cal. 461, 464 [11 P.2d 1, 82 A.L.R. 1170]): “ ‘[W]e cannot construe a section of the Constitution as if it were a statute, and adopt our own interpretation without regard to the legislative construction. Where more than one reasonable meaning exists, it is our duty to accept that chosen by the legislature.’ ”
 

 In
 
 San Francisco
 
 v.
 
 Industrial Acc. Com.,
 
 183 Cal. 273 [191 P. 26], a workmen’s compensation statute allowing recovery for work-connected “disease” as well as trauma was attacked on the ground that the enabling constitutional provision authorized the Legislature to prescribe such benefits for “injuiy” only. Our Supreme Court, after reviewing a number of decisions from other jurisdictions construing the word “injury,” stated
 
 (id.,
 
 at pp. 279-280):
 

 “As between these two conflicting lines of decision it is not necessary to determine where the weight of authority lies, or which cases are the better reasoned. If those which give the broader meaning to the word ‘injury’ do not lay down the better rule, they at least establish this, that it cannot be said that the broader meaning is an impossible or unreasonable one. The situation then, as it presents itself in connection with our constitutional provision, is at least that both by general usage and by the decisions of the courts the word ‘injury’ may have either of two meanings, and that either is reasonable and possible. In such a situation,
 
 where a constitutional provision may well have either of two meanings, it is a fundamental rule of constitutional construction that, if the legislature has by statute adopted one, its action in this respect is well nigh, if not completely, controlling.
 
 When the legislature has once construed the constitution, for the courts then to place a different construction upon it means that they must declare void the action of the legislature. It is no small matter for one branch of the government to annul the formal exercise by another and coordinate branch of power committed to the latter, and the courts should not and must not annul, as contrary to the constitution, a statute passed by the legislature, unless it can be said of the statute that it positively and certainly is opposed to the constitution. This is elementary. But plainly this cannot be said of a statute which
 
 *420
 
 merely adopts one of two reasonable and possible constructions of the constitution. ...
 

 “ \ . Where a statute has been adopted in carrying into effect a constitutional provision, the constitutional provision and statute must both be so construed as to permit the act to stand.. ..’ ” (Italics added.)
 

 In the case at bench, the Legislature adopted Government Code section 1770, subdivision (h) as part of its duty to carry into effect article XX, section .11. In so doing, it adopted the reasonable meaning that “convicted” signifies the entry of a judgment.
 

 The fact that the constitutional provision herein was mandatory rather than permissive as in
 
 San Francisco
 
 is not significant. Article XX, section 11 provided that the Legislature shall pass laws “to exclude from office . .. persons convicted of . .. perjury . ...” Such a provision, while mandatory, is not self-executing. It contemplates and requires legislation to give it effect.
 
 (Taylor
 
 v.
 
 Madigan,
 
 53 Cal.App.3d 943, 951 [126 Cal.Rptr. 376].) The Constitution clearly directs that the responsibility for carrying into effect this provision lies with the Legislature, and not with the courts.
 

 Appellants concede that Government Code section 1770, subdivision (h) appears “at variance” with their claim that rendition of the verdict constitutes “conviction” because it provides that an office becomes vacant at the time the judgment is entered. Appellants claim, however, that the Legislature lacked the power to authorize persons to continue exercising the privileges of public office after a jury verdict of guilty. They cite
 
 Pacific G. & E. Co.
 
 v.
 
 Industrial Acc. Com.,
 
 180 Cal. 497, 500 [181 P. 788], for the proposition that terms in a constitution “must be construed in the light of their meaning at the time of the adoption of the [constitutional provision], and cannot be extended by legislative definition, for such extension would, in effect, be an amendment of the constitution, if accepted as authoritative.. . .” Appellants’ reliance on
 
 Pacific G. & E. Co.
 
 is misplaced. In contrast to the case at bench, the meaning of the terms there involved was not ambiguous.
 

 The Legislature has enacted three sections in the Government Code which are pertinent to the issue herein as legislation implementing article XX, section 11. All three are in title I, “Public Officers and Employees.”
 
 *421
 
 Section 1021 provides: “A person is disqualified from holding any office upon conviction of designated crimes as specified in the Constitution and laws of the State.” Section 3000 provides that “[a]n officer forfeits his office” under identical circumstances, to wit “conviction ... as specified in the Constitution and laws of the State.” In turn, section 1770 provides that “[a]n office becomes vacant on the happening of any of the following events before the expiration of the term.” The subdivisions then list the specified events causing such a vacancy. Until 1971, subdivision (h) simply stated that the vacancy occurs on the “conviction of a felony or any offense involving a violation of his official duties.” That year, the Legislature amended the provision to add the following sentence: “An officer shall be deemed to have been convicted under this subdivision when trial court judgment is entered.” The legislative intent to construe “convicted” for purposes of a vacancy is patent from the clear language of the amendment.
 

 We must read these three sections together, viewing them in context and harmonizing the whole to ascertain the legislative purpose. It then becomes evident that the Legislature must have intended that an officer would become disqualified, and thereby forfeit his office so as to create a vacancy when judgment was entered following the verdict. It is patent that if the officer is disqualified and has forfeited his office, such office must be vacant. All three events necessarily occur simultaneously.
 

 In summary, the meaning of “convicted” is ambiguous. It has been variously construed by the courts and defined by the Legislature dependent on the context. Where, as here, a civil disability flows as a consequence of the “conviction,” the majority and better rule is to require the entry of judgment. In any event, the Legislature has chosen to adopt that meaning for exclusion from public office, and its interpretation is dispositive.
 

 We, therefore, hold, in accord with the Attorney General’s opinion (57 Ops.Cal.Atty.Gen. 374, 375 (1974)) that under California law a “conviction” for the purpose of exclusion from public office “consists of a jury verdict or court finding of guilt followed by a judgment upholding and implementing such verdict or finding.” Thus, on October 2, 1974, and not before, Lieutenant Governor Reinecke automatically forfeited his office and his rights and powers incident thereto. That forfeiture created a vacancy. Until then, Reinecke was entitled to
 
 *422
 
 exercise the powers and privileges of office. He was, therefore, entitled to all the compensation he received.
 

 Accordingly, the orders of dismissal are affirmed.
 

 Allport, Acting P. J., and Cobey, J., concurred.
 

 A petition for a rehearing was denied July 19, 1977, and appellants’ petition for a hearing by the Supreme Court was denied August 25, 1977. Bird, C. J., and Manuel, J., did not participate therein.
 

 [1]
 

 Both the parties and the applicable authorities use these terms interchangeably.
 

 [2]
 

 This judgment was later reversed. (See
 
 United States
 
 v.
 
 Reinecke
 
 (D.C.Cir. 1975) 524 F.2d 435 [173 App.D.C. 274].)
 

 [3]
 

 The court assumed appellants' complaint was amended “to allege, in substance, that during the period from July 27, 1974, to and including October 2, 1974, . . . Reinecke performed no significant official State acts or useful services.” The court, however, held “such allegations to be conclusions and/or irrelevant and therefore subject to a motion to strike.” The court also assumed the complaint was amended to allege that after Reinecke’s posttrial motions were denied on September 27, “Reinecke was legally convicted and, therefore, should not have received his salary from September 27, 1974 through October 2, 1974.”
 

 [4]
 

 Other procedural contentions do not require discussion. Since we conclude that neither of the proceedings is moot or barred by the doctrine of res judicata and affirm the judgments of the trial courts on the ground that “conviction” for purposes of disqualification occurs upon rendition of judgment, we need not decide whether plaintiffs had standing to sue in a taxpayers’ action or whether a quo warranto proceeding was the sole remedy. Reinecke only received salary for the period up to October 2; there was, therefore, no overpayment of salary.
 

 [5]
 

 As the court explained in
 
 Friends of Mammoth (ibid.):
 
 “Article VI, section 10, of the state Constitution gives original jurisdiction to the Supreme Court, Courts of Appeal, superior courts, and their judges in ‘proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition.’ Rule 56(a) provides: ‘If the petition might lawfully have been made to a lower court in the first instance, it shall set forth the circumstances which, in the opinion of the petitioner, render it proper that the writ should issue originally from the reviewing court . . . .’ In his comments to the rule, Witkin states: ‘In form this is a rule of
 
 pleading:
 
 in effect, however, it expresses the policy of the Supreme Court and courts of appeal to refuse to exercise their original jurisdiction in the first instance, unless the circumstances are exceptional.’ (5 Witkin, Cal. Procedure,
 
 supra,
 
 Extraordinary Writs, § 114, at p. 3889; see also
 
 Cohen
 
 v.
 
 Superior Court
 
 (1968) 267 Cal.App.2d 268, 270 [72 Cal.Rptr. 814].)”
 

 [6]
 

 The section was amended November 5, 1974, to delete the portion disfranchising convicted persons. This section and related section 10 were repealed in 1976 and replaced by article VII, section 8 which incorporated both sections as subdivisions (a) and (b), respectively. Since the former provision was in effect at all times relevant to the proceedings herein, we shall refer to that provision as article XX, section 11 throughout this opinion.
 

 [7]
 

 Subsequently, in 1966, the Constitution was amended to provide that the governor could pardon only after sentence was pronounced.
 

 [8]
 

 As of November 1974, all constitutional provisions of permanent disfranchisement were repealed.