TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 90-901 |
| of | : | |
| | : | DECEMBER 26, 1990 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DA VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

DANIEL B. LEE, relator herein, has requested this office to grant leave to sue HARRY BOWERS in a "quo warranto" proceeding pursuant to the terms of Code of Civil Procedure section 803. The proposed complaint alleges that Mr. Bowers is unlawfully occupying a public office, to wit: member of the Board of Directors ("Board") of the Mt. Diablo Hospital District ("District"), County of Contra Costa.

CONCLUSION

It is concluded that leave to sue should be DENIED.

CRITERIA FOR QUO WARRANTO

In deciding whether to grant leave to sue in the name of the People of the State of California, we consider two fundamental principles, which provide the basis for this analysis. First, leave will be granted where there is a substantial question of law or fact which requires judicial resolution. Second, leave will be granted where the action in quo warranto would serve the overall public interest of the people of this state. (72 Ops.Cal.Atty.Gen. 15, 19 (1989).)

MATERIAL FACTS

In November of 1988, Mr. Bowers was elected, qualified, and assumed office as a Board member of the District.

MR. LEE alleges as follows:

On April 1, 1989, Mr. Bowers filed with the post office, for himself and his entire family, a change of mailing address from Limewood Drive, Concord (within the District) to Quiet Circle, Concord (outside the District). The 1989 Pacific Bell telephone directory listed Mr. Bower's telephone at Quiet Circle. In November 1989, a Ford automobile was registered by the Department

1.                                                                                                                                90-901

of Motor Vehicles to Mr. Bowers at Quiet Circle.  On April 19, 1989, Mr. Bowers changed his voting registration from Limewood Drive to Park Highlands Boulevard, Concord (within the District).  However, a Park Highlands neighbor recited that "No one has lived there for over a year. . . ."  Quiet Circle is owned by Mr. Bowers and his wife.  No homeowner's exemption has been filed on the Park Highlands property.

MR. BOWERS alleges as follows:

On the date of election, November 8, 1988, he resided at Limewood Drive, Concord.  In March 1989, he sold the Limewood residence and "established domicile" at the Park Highlands address within the District.  It was then and has been his intention "that the property at Park Highlands was my domicile . . . and to always return to that property as my place of habitation."  He and his wife have owned the Park Highlands residence since 1985.  His driver's license address is the Park Highlands address.  His wife has received and paid for certain utility and homeowners association charges for services to the Park Highlands property during 1989.  He also owns property on Quiet Circle and resides there for "periods during the year, also."  He has only a security interest in the Ford automobile registered at Quiet Circle; the car belongs to his daughter who resides there.

ISSUES OF LAW OR FACT

1.      Is Mr. Bowers required by law to have his residence within the District?

2.      Has Mr. Bowers ceased to be an inhabitant of the District?

ANALYSIS

Mr. Lee alleges that Mr. Bowers is unlawfully occupying the office of District Board member because his residence is no longer within the boundaries of the District.  Section 1770 of the Government Code provides in part:

"An office becomes vacant on the happening of any of the following events before the expiration of the term:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) His ceasing to be an inhabitant of the state, or if the office be local and one for which local residence is required by law, of the district, county, or city for which the officer was chosen or appointed . . . ."

Under this section, two conditions must occur in order for a vacancy to arise in a local public office: there must be a law requiring local residence for the office, and the officer must have ceased to be an inhabitant of the area for which that local residency is required.  (73 Ops.Cal.Atty.Gen. 197, 203 (1990).)

With regard to the first of these conditions, Health and Safety Code section 32100 provides:

"The elective officers of a local hospital district shall be a board of hospital directors consisting of five members, <u>each of whom shall be a registered voter residing in the district</u> and whose term shall be four years. . . ."  (Emphasis added.)

We have no doubt that this language setting forth such a "residency" requirement meets the test of Government Code section 1770 of an office "for which local residence is required by law." (Cf., 73 Ops.Cal.Atty.Gen., *supra*, at 204 [Ed. Code, § 45244 - school district personnel commissioner]; 72 Ops.Cal.Atty.Gen. 63, 65-68 (1989) [Gov. Code, § 36502 - city council member]; 72 Ops.Cal.Atty.Gen. 15, 21-22 (1989) [Wat. Code, § 30500 - water district director]; 72 Ops.Cal.Atty.Gen. 8, 10-14 (1989) [Gov. Code, § 34882 - city council member]; 66 Ops.Cal.Atty.Gen. 229, 230 (1983) [Gov. Code, § 71140 - marshal]; 59 Ops.Cal.Atty.Gen. 627, 629 (1976) [Gov. Code, § 71140 - justice court judge]; 58 Ops.Cal.Atty.Gen. 888, 891 (1975) [Ed. Code, §§ 1161, 3254 - school district trustee]; 35 Ops.Cal.Atty.Gen. 198, 200-202 (1960) [Gov. Code, § 36502 - city council member].)

We next consider whether Mr. Bowers has ceased "to be an inhabitant" of the District for purposes of Government Code section 1770. "Inhabitant" has been interpreted in this context to mean one who has "any factual place of abode of some permanency, more than a mere temporary sojourn" (*Smith* v. *Smith* (1955) 45 Cal.2d 235, 239) plus an intention of remaining and of returning whenever absent. (73 Ops.Cal.Atty.Gen., *supra*, at 208-209; 72 Ops.Cal.Atty.Gen., *supra*, at 21-22; 72 Ops.Cal.Atty.Gen., *supra*, at 10-14.)[1]

The test for determining whether one is an "inhabitant" as that term is used in Government Code section 1770 was described in 72 Ops.Cal.Atty.Gen., *supra*, at 22:

"Many factors enter into this equation, including where an individual is registered to vote and his or her address for mail (*Ballf* v. *Public Welfare Department* (1957) 151 Cal.App.2d 784, 788-89), where his or her tax returns are filed (*Johnson* v. *Johnson* (1966) 245 Cal.App.2d 40, 44), where an automobile is registered (8 Ops.Cal.Atty.Gen. 221 (1946)), and where a homeowner's exemption or renter's credit is taken (Cal. Elec. Code, § 211; *Fenton* v. *Board of Directors*, *supra*, at p. 1112).

"The critical element is one of intent, and while the declarations of the individual in this regard are important, such declarations are not determinative. The acts of the individual must be examined as well. (*Mauro* v. *Department of Mental Hygiene* (1962) 207 Cal.App.2d 381, 389.)

Under this test for applying Government Code section 1770, we find that Mr. Lee's allegations are ambiguous and, if found in a judicial proceeding to be true, would nevertheless be inadequate as a matter of law to support a determination that Mr. Bowers has ceased to be an "inhabitant" of the District. Specifically, while a change of mailing address and telephone listing to a location outside the District may indicate some *presence* outside the District, they are not inherently inconsistent with also maintaining physical presence within the District with an intention to return whenever absent from the District. Further, the registration of an automobile outside the District is essentially ambiguous under the facts alleged. On the other hand, Mr. Bowers has owned the Park Highlands property within the District since 1985, has intended it to be his place of habitation since 1989 (intending to return to it whenever absent), has his voter registration there, and has the Park Highlands address on his driver's license.

---

[1] As so restrictively interpreted, "inhabitant" connotes "legal residence" and "domicile" for which only a single location may serve. (See *Walters* v. *Weed* (1988) 45 Cal.3d 1, 7; *Smith* v. *Smith*, *supra*, 45 Cal.2d at 239-240; *Fenton* v. *Board of Dirs.* (1984) 156 Cal.App.3d 1107, 1112; 30 Ops.Cal.Atty.Gen. 6, 10 (1957).)

We are mindful of the general principle that ambiguities concerning the right to hold public office should be resolved in favor of eligibility. The court stated in *Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 418:

"We consider disqualification from public office a significant civil disability. In California, the right to hold public office has long been recognized as a valuable right of citizenship. In 1869, in *People* v. *Washington*, 36 Cal. 658, 662, our Supreme Court declared that `[t]he elective franchise and the right to hold public offices constitute the principle political rights of citizens of the several States.' In *Carter* v. *Com. on Qualifications etc.*, 14 Cal.2d 179, 182, the court pointed out: `[T]he right to hold public office, either by election or appointment, is one of the valuable rights of citizenship . . . *The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office. . . .*' (Italics added.) More recently, the high court, citing *Carter*, has termed the right to hold public office a `fundamental right.' (*Zeilenga* v. *Nelson*, 4 Cal.3d 716, 720; *Fort* v. *Civil Service Commission*, 61 Cal.2d 331, 335.) Thus, any ambiguity in a constitutional provision calling for forfeiture of an existing office and disqualification from holding public office should be resolved in favor of continued eligibility. . . ."

We conclude that no substantial issue of law or fact is presented by this application and that the principles enunciated in *Helena Rubenstein Internat.* v. *Younger*, *supra*, are dispositive. We have previously declined to grant leave to sue on essentially similar factual allegations. (See 72 Ops.Cal.Atty.Gen., *supra*, at 68-70; 72 Ops.Cal.Atty.Gen., *supra*, at 22-23; 72 Ops.Cal.Atty.Gen., *supra*, at 13-15.)

PUBLIC INTEREST

In any event, the mere existence of a legal dispute does not establish that the public interest requires a judicial resolution of the dispute or that leave automatically should be granted for the proposed relator to sue in quo warranto. (67 Ops.Cal.Atty.Gen. 151, 154 (1989).) As stated in *City of Campbell* v. *Mosk* (1961) 197 Cal.App.2d 640, 650: "The exercise of the discretion of the Attorney General in the grant of such approval to sue calls for care and delicacy. Certainly the private party's right to it cannot be absolute; the public interest prevails."

We do not believe it would be in the public interest to burden the District or the courts with this dispute. Further, a contrary disposition would discourage participation by citizens on public boards and commissions such as the District's Board. (72 Ops.Cal.Atty.Gen., *supra*, at 24.)

For the foregoing reasons, leave to sue is denied.

\* \* \* \* \*