TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 96-505 |
| of | : | |
| | : | March 20, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE PHILLIP S. CRONIN, COUNTY COUNSEL, COUNTY OF FRESNO, has requested an opinion on the following questions:

1. May a member of a county board of supervisors or an elected county treasurer contribute personal funds to his or her own reelection campaign while serving as a member of a county treasury oversight committee?

2. May a member of a county board of supervisors or an elected county treasurer raise funds for his or her own reelection campaign while serving as a member of a county treasury oversight committee?

3. May a member of a county board of supervisors or an elected county treasurer contribute to the other's reelection campaign while serving as a member of a county treasury oversight committee?

4. May a member of a county board of supervisors or an elected county treasurer raise funds for the other's reelection campaign while serving as a member of a county treasury oversight committee?

5. May a member of a county board of supervisors or an elected county treasurer endorse the candidacy of the other or attend or speak at a public campaign event in support of his or her own candidacy or in support of the other's candidacy for reelection while serving as a member of a county treasury oversight committee?

6. May a member of a county board of supervisors become a member of a county treasury oversight committee if he or she has been employed by a family-owned business which has contributed to his or her reelection campaign or to the reelection campaign of the elected county treasurer?

CONCLUSIONS

1. A member of a county board of supervisors or an elected county treasurer may

contribute personal funds to his or her own reelection campaign while serving as a member of a county treasury oversight committee.

2. A member of a county board of supervisors or an elected county treasurer may raise funds for his or her own reelection campaign while serving as a member of a county treasury oversight committee.

3. A member of a county board of supervisors or an elected county treasurer may contribute to the other's reelection campaign while serving as a member of a county treasury oversight committee.

4. A member of a county board of supervisors or an elected county treasurer may not raise funds for the other's reelection campaign while serving as a member of a county treasury oversight committee.

5. A member of a county board of supervisors or an elected county treasurer may endorse the candidacy of the other or attend or speak at a public campaign event in support of his or her own candidacy or in support of the other's candidacy for reelection while serving as a member of a county treasury oversight committee.

6. A member of a county board of supervisors may not become a member of a county treasury oversight committee if he or she has been employed by a family-owned business which has made contributions to his or her reelection campaign or to the reelection campaign of the elected county treasurer.

ANALYSIS

In late 1994, Orange County and the Orange County Investment Pool filed petitions for bankruptcy protection under Chapter 9 of the federal Bankruptcy Code. (11 U.S.C. §§ 901-946.) Following legislative committee hearings into the causes of the bankruptcy, the Legislature enacted several laws governing the investment of funds belonging to local government agencies. Included among the new laws were provisions establishing county treasury oversight committees. (Gov. Code, §§ 27130-27137.) **Foontnote No. 1** The six questions presented for resolution concern the statutory requirements for membership on such committees and whether these statutory requirements are constitutional.

A county treasury oversight committee is established under the terms of section 27131:

"The board of supervisors in each county or city and county shall, if the county or city and county is investing surplus funds, establish a county treasury oversight committee. The board of supervisors, in consultation with the county treasurer, shall determine the exact size of the committee, which shall consist of from 3 to 11 members, and the categories from which the members shall be represented, as specified in subdivisions (a) to (g), inclusive, of Section 27132. Members shall be nominated by the treasurer and confirmed by the board of supervisors."

Section 27132 in turn provides:

"The county treasury oversight committee, pursuant to Section 27131, shall consist of members appointed from the following:

"(a) The county treasurer.

"(b) The county auditor, auditor-controller, or finance director, as the case may be.

"(c) A representative appointed by the county board of supervisors.

"(d) The county superintendent of schools or his or her designee.

"(e) A representative selected by a majority of the presiding officers of the governing bodies of the school districts and community college districts in the county.

"(f) A representative selected by a majority of the presiding officers of the legislative bodies of the special districts in the county that are required or authorized to deposit funds in the county treasury.

"(g) Up to five other members of the public.

"(1) A majority of the other public members shall have expertise in, or an academic background in, public finance.

"(2) The other public members shall be economically diverse and bipartisan in political registration."

Sections 27131 and 27132 allow each county to determine, within certain limitations, the size of the county treasury oversight committee and its composition. A county may choose to have a committee comprised solely of members of the general public, solely of government officials, or a combination of both. Pursuant to Section 27131, these choices are made by the board of supervisors in consultation with the county treasurer. **Footnote No. 2**

The Legislature has required in section 27133 that a county treasury oversight committee annually prepare an investment policy which must contain the following elements:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) The criteria for selecting security brokers and dealers from, to, or through whom the county treasury may purchase or sell securities or other instruments. The criteria shall prohibit the selection of any broker, brokerage, dealer, or securities firm that has, within any consecutive 48-month period following January 1, 1996, made a political contribution in an amount exceeding the limitations contained in Rule G-37 of the Municipal Securities Rulemaking Board, to the local treasurer, any member of the governing board of the local agency, or any candidate for those offices.

"(d) Limits on the receipt of honoraria, gifts, and gratuities from advisors, brokers, dealers, bankers, or other persons with whom the county treasury conducts business by any member of the county treasury oversight committee. These limits may be in addition to the limits set by a committee member's own agency, by state law, or by the Fair Political Practices Commission."
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

While the forgoing statute is aimed at insuring independence of county treasury oversight committee members from the "investment industry," independence from political influence is the target of sections 27132.1 and 27132.2. These two statutes are the focus of the six questions to be resolved. Section 27132.1 provides:

"A member may not be employed by an entity that has (a) contributed to the campaign of a candidate for the office of local treasurer, or (b) contributed to the campaign of a candidate to be a member of a legislative body of any local agency that has deposited funds in

the county treasury, in the previous three years or during the period that the employee is a member of the committee."

Section 27132.2 states:

"A member may not directly or indirectly raise money for a candidate for local treasurer or a member of the governing board of any local agency that has deposited funds in the county treasury while a member of the committee."

The questions posed are based upon the assumptions that a member of a board of supervisors and an elected county treasurer are members of a county treasury oversight committee and that each is also a candidate for reelection. We have been asked whether sections 27132.1 and 27132.2 are applicable to certain political activities of these members.

1. Contributing to One's Own Campaign

The first question is whether a member of a board of supervisors or an elected county treasurer serving as a member of a county treasury oversight committee may contribute to his or her own reelection campaign.

There is nothing in the language of sections 27132.1 or 27132.2 that governs, much less prohibits, the making of campaign contributions. Section 27132.1 relates to employment by entities that make certain contributions. Section 27132.2 deals with raising campaign funds, which is not the same as contributing funds. Fund raising involves the solicitation of contributions.

We conclude that a member of a county board of supervisors or an elected county treasurer serving as a member of a county treasury oversight committee may contribute to his or her own reelection campaign.

2. Raising Funds for One's Own Campaign

We next consider whether a supervisor or an elected treasurer serving as a member of a county treasury oversight committee may raise funds for his or her own reelection campaign.

Section 27132.2 prohibits any member of a county treasury oversight committee from raising funds directly or indirectly for a candidate for the office of treasurer, or a candidate who is "a member of the governing board of a local agency that has deposited funds in the county treasury . . . ." The latter phrase includes a supervisor serving on a county treasury oversight committee who is a candidate for reelection.

When "statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73.) The plain meaning of section 27132.2 applies the prohibition to any member of a county treasury oversight committee, including a supervisor or elected treasurer who is running for reelection.

However, prohibiting a supervisor or treasurer from raising funds for his or her own reelection campaign raises serious constitutional issues. "In California, the right to hold public office has long been recognized as a valuable right of citizenship." (*Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 418; see *Clements* v. *Fashing* (1982) 457 U.S. 957, 963-966.) The right to run for office necessarily includes the right to campaign and to raise funds for that campaign.

In *Buckley* v. *Valeo* (1976) 424 U.S. 1, 14, the court noted that political campaign contribution and expenditure limitations "operate in an area of the most fundamental First Amendment activities." (See also *Citizens Against Rent Control* v. *Berkeley* (1981) 454 U.S. 290, 294.) In *Planning &*

activities." (See also *Citizens Against Rent Control* v. *Berkeley* (1981) 454 U.S. 290, 294.) In *Planning & Conservation League, Inc.* v. *Lungren* (1995) 38 Cal.App.4th 497, 505, the Court of Appeal stated:

"The First Amendment to the United States Constitution prohibits any law `abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.' This prohibition is applicable to the states by virtue of the Fourteenth Amendment. [Citation.]

"The First Amendment protects not only the rights of speech and petition but also *the right to contribute financial and other support to a political candidate* or a ballot measure. [Citation.] In addition, the freedom to speak or to petition the government could hardly be protected from Government interference without *a correlative associational freedom to engage in group effort toward these ends*. [Citations.]

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Those categories of speech and association related to campaigns for political office or issue-based elections reside at the core of the First Amendment. [Citations.] `When a law burdens core political speech, we apply `exacting scrutiny,' and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest. [Citation.]' [Citation.]" (Italics added, fn. omitted.)

*Buckley* v. *Valeo*, *supra*, 424 U.S. at 23, held that limits on campaign expenditures impose significantly more severe restrictions on protected freedoms of political expression and association than do limitations on financial contributions. The court found unconstitutional that portion of the Federal Election Campaign Act of 1971 (2 U.S.C. § 431 et seq.) which imposed limits on expenditures.

It follows from these First Amendment principles that a candidate may not be prohibited by statute from raising funds for his or her own campaign, either personally or through a campaign committee. If there is a right to expend funds without limit on a political campaign, there must also be a right to raise funds for that campaign, since the former would be meaningless without the latter.

We conclude that section 27132.2 may not be applied so as to prevent a supervisor or elected treasurer who serves on a county treasury oversight committee from raising funds for his or her own campaign.

3. Contributing to the Campaign of Another

The third question we are asked to address is whether, if a supervisor and elected treasurer are both serving on a county treasury oversight committee, may either contribute to the campaign of the other. As with our analysis of the first question, we find nothing in section 27132.1 or section 27132.2 that prohibits the making of contributions. Rather, the prohibition is on fund raising, which involves the solicitation of contributions. Each member may contribute to the campaign of the other, subject to any limits on contributions established by other laws. (See, e.g., §§ 85301-85313.)

4. Raising Funds for the Campaign of Another

Next we are asked whether a supervisor or elected treasurer serving on a county treasury oversight committee may raise funds for the reelection campaign of the other.

Preliminarily we note that the Legislature has not defined the particular activities that are encompassed by the phrase: "A member may not directly or indirectly raise money for a candidate . . ." contained in section 27132.2. To "raise" in this context generally means "to bring together: collect, gather, levy (the government *raised* large sums for highway construction by a tax on gasoline sales) (the budget

levy (the government *raised* large sums for highway construction by a tax on gasoline sales) (the budget . . . is *raised* by registration fees, ticket sales, and grants . . . ." (Webster's Third New Internat. Dict. (1971) p. 1877.) Specifically with respect to raising funds for charitable purposes, the Legislature has identified three different aspects to fund raising activities: solicitation, receipt, and control of funds, assets, or property. (§ 12599, subd. (a).) While the Legislature has used the term "indirectly" in section 27132.2, we believe that the activities must nonetheless involve the solicitation, receipt, or control of campaign funds by the committee member. Such activities as giving political campaign speeches or making endorsements would thus not be covered, if a solicitation is not made by the committee member, even though the activities might have the incidental effect of producing political contributions.

Section 27132.2 explicitly prohibits a committee member from raising funds for a candidate for treasurer or for a member of the governing board of a local agency that has deposited funds in the county treasury. Therefore neither the treasurer nor the supervisor serving on the committee may raise funds for the campaign of the other unless there is some constitutional impediment precluding application of section 27132.1 in such circumstances.

It may at first appear that this question must necessarily be answered in the same manner as the second question above dealing with fund raising for one's own campaign. Certainly there are common considerations. The First Amendment and associational rights of every person would seem to allow fund raising for a political campaign. The court in *Buckley* v. *Valeo*, *supra*, 424 U.S. at 65-66, noted:

"As we have seen, group association is protected because it enhances `[e]ffective advocacy.' [Citation.] The right to join together `for the advancement of beliefs and ideas,' [citation], is diluted if it does not include the right to pool money through contributions, for funds are often essential if `advocacy' is to be truly or optimally `effective.'"

Nevertheless, there are significant differences between prohibiting the raising of funds for oneself and prohibiting a very limited number of people from engaging in fund raising for another's campaign for certain specified offices. In the first place, the right to run for political office would be severely impacted if a candidate could not personally engage in fund raising for his or her own campaign. No such effect would be likely from the limitations contained in section 27132.2, which would limit the right of at most 10 people in each county to act as fund raisers for another person. Moreover, allowing committee members to raise money for the campaigns of other persons who are responsible for depositing funds in the treasury or determining investment policy would permit the type of relationship which the Legislature sought to avoid in enacting this statutory scheme. (See § 27133.) It would lead, at least, to the appearance of a lack of independence on the part of the committee members, a danger not present when a member is raising funds for his or her own campaign.

The strictures on fund raising found in section 27132.2 appear no more onerous than those imposed upon judges by the California Code of Judicial Ethics adopted by the Supreme Court, which provides in Canon 5:

"Judges are entitled to entertain their personal views on political questions. They are not required to surrender their rights or opinions as citizens. They shall, however, avoid political activity that may create the appearance of political bias or impropriety. Judicial independence and impartiality should dictate the conduct of judges and candidates for judicial office.

"A. Political Organizations

"Judges and candidates for judicial office shall not

"(1)  act as leaders or hold any office in a political organization;

"(2)  make speeches for a political organization or candidate for nonjudicial office or publicly endorse or publicly oppose a candidate for nonjudicial office;

"(3)  *personally solicit funds for a political organization or nonjudicial candidate*; or make contributions to a political party or political organization or to a nonjudicial candidate in excess of five hundred dollars in any calendar year per political party or political organization or candidate, or in excess of an aggregate of one thousand dollars in any calendar year for all political parties or political organizations or nonjudicial candidates." (Italics added.)

The Supreme Court has thus established an ethical standard for judges that precludes fund raising for *any* non-judicial candidate. Section 27132.2, on the other hand, limits fund raising by members of a county treasury oversight committee only for specified offices.

Section 27132.2 is also more narrowly circumscribed in its limitations than the federal rules applicable to the political activities of federal employees. The federal limitations were upheld by the court in *CSC* v. *Letter Carriers* (1973) 413 U.S. 548. While section 27132.2 infringes upon the right of a committee member to engage in certain political activities, its ban upon fund raising for others is a legitimate method of achieving the Legislature's goals of assuring the political and financial independence of each committee member.

We conclude that section 27132.2's ban on fund raising for others does not unconstitutionally infringe upon the rights of a county supervisor or elected treasurer serving on a county treasury oversight committee. The statutory fund raising prohibition precludes each from soliciting funds for the other.

### 5.  Non-financial Support for a Candidate

We next consider whether a member of a county board of supervisors or an elected county treasurer, while serving as a member of a county treasury oversight committee, may endorse the other's candidacy or attend or speak at a public campaign event in support of his or her own candidacy or in support of the other's candidacy for reelection.

Since nothing in the language of sections 27132.1 or 27132.2 makes reference to non-financial support, whether by way of endorsement, attending campaign events, or making speeches, there is no prohibition on these activities. As we explained in answer to the fourth question, "indirect" fund raising is prohibited where the committee member solicits, receives, or controls the funds in some manner. Speeches without soliciting funds by the committee member are not proscribed.

### 6.  Employment By Entity That Has Made Campaign Contributions

The final question we address focuses upon section 27132.1. We are asked whether a member of a county board of supervisors may become a member of a county treasury oversight committee if he or she has been employed by a family-owned business that has contributed to his or her reelection campaign or to the reelection campaign of the elected county treasurer. Section 27132.1 precludes a committee member from employment by an entity which has contributed to the campaign of the treasurer or the campaign of a candidate for the governing board (e.g., board of supervisors) which has deposited funds in the county treasury. The plain language of the statute would preclude membership on the county treasury oversight committee in the circumstances set forth. We consider whether it may be constitutionally applied.

The question assumes that an employing entity has made a contribution of the type described and that the entity is a "family business." We take the term "family business" to

mean one owned by the immediate family of the candidate. May a contribution from family financial resources disqualify a person from membership on a county treasury oversight committee?

Although *Buckley* v. *Valeo*, *supra*, 424 U.S. 1, noted that the Federal Election Campaign Act of 1971 (2 U.S.C. § 431 et seq.) limited the use of the candidate's personal funds *and* those of the candidate's immediate family, it found unconstitutional only the limits on the use of the candidate's personal funds. The court did not find that the "immediate family" had a constitutional right to use resources without regard to contribution limits. Indeed, we see no reason why the family of a candidate should be treated differently from other persons who are not themselves candidates in applying laws governing political contributions.

*Buckley* v. *Valeo*, *supra*, 424 U.S. at 23-38, upheld the constitutionality of limits on campaign contributions. We are aware of no "family exemption" from those limits that would justify treating contributions by a "family business" differently from contributions by any other entity. Therefore, section 27231.1 is applicable when the contribution is from a "family business" rather than from the candidate's personal funds.

We also note that none of the considerations applicable to a candidate's use of personal funds for his or her own campaign are affected when one candidate contributes to another. Consequently, if a county treasury oversight committee member's employing "family business" is contributing to a candidate *other* than the one employed by the business, section 27132.1 is clearly applicable.

\* \* \* \* \*

---

**Footnote No. 1**
All undesignated section references hereafter are to the Government Code.
**Footnote No. 2**
The financial powers of a board of supervisors (§§ 25250-25265) include the authority to create funds and transfer money from one fund to another (§ 25252) and to examine the books and accounts of the treasurer (§§ 27100-27101); a county treasurer (§§ 27000-27101) receives and keeps all money belonging to the county (§ 27000) and may invest funds (§ 53565).